Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily E. Hough (SBN 315277)
lhough@edelson.com
EDELSON PC
123 Townsend Street,
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Classes*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| S.D. individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>HYTTO LTD., D/B/A LOVENSE, a Hong Kong, China corporation,<br><br>*Defendant.* | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) Violation of the Federal Wiretap Act, 18 U.S.C. § 2510**<br>**(2) Intrusion Upon Seclusion; and**<br>**(3) Unjust Enrichment.**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff S.D. ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Hytto, Ltd. d/b/a Lovense ("Lovense" or "Defendant") for selling products that secretly collect and transmit highly sensitive personally identifiable information about the consumers using them. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

CLASS ACTION COMPLAINT                           1

## NATURE OF THE ACTION

1. Defendant Lovense is a "sextech" company that sells a high-end vibrator called "Lush." To fully operate Lush, users download Defendant's "Body Chat" application from the Apple Store or the Google Play store and install it on their smartphones. With Body Chat, users can "pair" their smartphone to Lush, allowing them—and their partners—remote control over the vibrator's settings and features.

2. Unbeknownst to its customers, however, Defendant designed Body Chat to (i) collect and record highly intimate and sensitive data regarding consumers' personal use of its Lovense vibrators, including the date and time of each use and the selected vibration settings ("Usage Information"), and (ii) transmit the Usage Information—along with the user's personal email address—to its servers.

3. Though the data collected from its customers' smartphones is undoubtedly valuable to the company, Defendant's conduct demonstrates a wholesale disregard for consumer privacy rights and violated state and federal laws.

4. As such, Plaintiff brings suit individually and on behalf of all others similarly situated and seeks (i) an injunction prohibiting Defendant from monitoring, collecting, and transmitting consumers' Usage Information, (ii) actual and statutory damages arising from the invasion of their personal privacy, and (iii) actual damages arising from the purchase of their Lovense devices, including the return of the purchase price and disgorgement of profits.

## PARTIES

5. Plaintiff S.D. is a natural person and citizen of the State of Georgia.

6. Defendant Hytto, LTD., is a foreign corporation organized and existing under the laws of the People's Republic of China with its principal place of business located at 12/F AT Tower, No. 180 Electric Road., North Point, Hong Kong. Defendant does business throughout the United States and the State of Georgia, including in this District.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over Plaintiff's

CLASS ACTION COMPLAINT                    2

claim under the Wiretap Act, 18, U.S.C. §§ 2510, a federal statute, and supplemental jurisdiction over Plaintiff's common law claim because it is so related to the federal claim that form part of the same case or controversy under Article III of the United States Constitution. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Classes is a citizen of a different state than the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

8.  This Court has personal jurisdiction over Defendant because it conducts business in the State of California and the events giving rise to this lawsuit occurred in the State of California.

9.  Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

10. Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Francisco Division.

## COMMON FACTUAL ALLEGATIONS

*A Brief Overview of Lovense and Body Chat*

11. In October 2015, Defendant released its Lovense product line, including the Lovense Lush, that enabled customers to remotely control their vibrators from a smartphone.

12. Lovense maintains an interactive website, Lovense.com, where it markets and sells its products. Consumers can create an account on Lovense.com by providing their email address and agreeing to the Terms of Use and Privacy Policy containing, *inter alia*, California-specific terms.

13. Lovense ships its products directly to consumers, but also utilizes its affiliate network, and distributes its products for sale in brick and mortar stores—including stores in California and in this District.

14. Lovense conducts significant business with California-based companies to market and sell its products.

CLASS ACTION COMPLAINT                   3

15. For example, Lovense initiated a fundraising campaign for the Lovense products on www.indiegogo.com, a "crowd-funding" platform operated by the San Francisco based company, Indiegogo, Inc. ("Indiegogo"). For that fundraising campaign, Lovense entered into a contractual agreement with Indiegogo, Inc., and agreed to be bound by California choice of law and venue clauses:

> For individuals residing outside the United States, arbitration shall be initiated in the State of California, United States of America, and you and Indiegogo agree to submit to the personal jurisdiction of any federal or state court in San Francisco County, California in order to compel arbitration, to stay proceedings pending arbitration, or to confirm, modify, vacate, or enter judgment on the award entered by the arbitrator.[1]

16. Additionally, Lovense maintains accounts with California-based companies Facebook, Inc. ("Facebook"), and Twitter, Inc. ("Twitter"), from which it conducts marketing for the Lovense products. Lovense and Facebook have entered in a contractual agreement for this account and have agreed that California law applies and that all disputes will be brought "exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County."[2] Similarly, Lovense and Twitter agreed to resolve all disputes according to California law and bring any claims "solely in the federal or state courts located in San Francisco County, California."[3]

17. In addition to Indiegogo, Facebook, and Twitter, Lovense uses California-based PayPal, Inc. ("PayPal"), as its online payment processor for the Lovense products. Lovense agreed to PayPal's terms including provisions subjecting Lovense to California's jurisdiction.[4]

18. Lovense utilizes only two methods to publish its mobile applications that control the Lovense products. First, Lovense publishes its Lovense apps in the Apple App Store and entered

---

[1] *Terms of Use | Indiegogo*, https://www.indiegogo.com/about/terms (last visited Jan. 12, 2018).
[2] *(28) Terms of Service*, https://www.facebook.com/legal/terms (last visited Jan. 12, 2018).
[3] *Terms of Service*, https://twitter.com/en/tos (last visited Jan. 12, 2018).
[4] *PayPal,* https://www.paypal.com/us/webapps/mpp/ua/provt-preview2 (last visited Jan. 12, 2018).

CLASS ACTION COMPLAINT 4

into a contractual agreement with Apple Inc. ("Apple"), a California headquartered company. In that agreement, Lovense and Apple agreed that "The parties further submit to and waive any objections to personal jurisdiction of and venue in any of the following forums: U.S. District Court for the Northern District of California, California Superior Court for Santa Clara County, Santa Clara County Municipal Court, or any other forum in Santa Clara County, for any disputes arising out of this Agreement."[5]

19. Second, Lovense publishes its Lovense apps in the Google Play Store and entered into a contractual agreement with Google, Inc., another company headquartered in California. In that contract, Lovense agreed "to submit to the exclusive jurisdiction of the federal or state courts located within the county of Santa Clara, California to resolve any legal matter arising from or relating to this Agreement or your relationship with Google under this Agreement … ."[6]

20. In other words, Lovense relies heavily on a suite of California companies to market, advertise, fund, sell, distribute, and publish apps for its Lovense products.

21. Indeed, to fully take advantage of the Lovense products and to access the product's entire functionality, users must first download one of Defendant's proprietary remote control applications, such as the Body Chat app, shown in <u>Figure 1</u> (the "Body Chat App"), Lovense Connect, or Lovense Remote from the Apple Store or the Google Play store.

\*          \*          \*

---

[5] *apple_developer_agreement.pdf*, https://developer.apple.com/programs/terms/apple_developer_agreement.pdf (last visited Jan. 12, 2018).

[6] *Google Play*, https://play.google.com/about/developer-distribution-agreement.html (last visited Jan. 12, 2018).

CLASS ACTION COMPLAINT                                    5

(Figure 1.)

22. Once downloaded, the Body Chat App allows users to "pair" (i.e., connect) their Lovense vibrators to their smartphones using a Bluetooth connection. Through the Body Chat App, Defendant allows users to access and control their Lovense device's full array of features and settings, including the various vibration intensities.

23. Defendant also programmed the Body Chat App to allow for users and their partners to intimately communicate with each other. With the "Long Distance Control" feature, the user and partner can exchange text messages, engage in video chats, and can control a paired Lovense devices.

24. To increase sales of the Lovense Lush vibrator—and Defendant's entire Lovense product line—Defendant advertised its device's app functionality on its website and on the products' packaging. For instance, the packaging for the Lovense Lush vibrator states that customers can "Control [the Lovense Lush] with your smartphone or Apple Watch!" and states that the app is available for download on the Google Play store and Apple Store.

25. Defendant's website likewise boasts of the Lovense product line's app functionality, advertising that the "smartphone app has features for everyone" and explaining that the app provides access to additional features and functionality.[7]

---

[7] *Let him control you... from ANYWHERE! | Lush by LOVENSE,* https://www.lovense.com/bluetooth-remote-control-vibrator (last visited Jan. 12, 2018).

CLASS ACTION COMPLAINT          6

26. Defendant also touts that its devices maintain user privacy by promising that users' sensitive data will not pass through or be stored by its servers. See <u>Figure 2</u>. Defendant also promises that the data it "pass[es]" along through the App (i.e., user to user communications) is encrypted and that it is "nearly impossible for someone" to access user data. See <u>Figure 2</u>.

> Is my data protected?
>
> We take your privacy very seriously. We have designed our system to record as little information about our users as possible. Absolutely no sensitive data (pictures, video, chat logs) pass through (or are held) on our servers. All data transfers are peer-to-peer. Furthermore, we encrypt the data before passing it along to your partner. The same data encryption technology that Google, Skype, Facetime and others use- It would be nearly impossible for someone to obtain any of the content that is happening on our platform.

(**Figure 2.**)

27. Defendant knows that consumers in the market for internet connected intimate devices demand privacy and security, which is why Defendant included privacy and security as key selling points of its Lovense product line. By making such representations, Defendant was able to charge a higher price for its vibrators, relative to less secure versions.

***Defendant Designed Body Chat to Secretly Collect Customers' Intimate Usage Data***

28. By design, the defining feature of the Lovense Lush device is the ability to remotely control it through a mobile app. Defendant requires customers to use one of their official apps to fully access the Lovense Lush's features and functions. One of those official apps is the Body Chat App. Yet, Defendant fails to notify or warn customers that the Body Chat App monitors and records, in real time, how people use these intimate devices and transmits the collected private usage information to its servers. Nor does Defendant seek consent before it begins collecting and transmitting.

29. Indeed, Defendant programmed the Body Chat App to secretly collect intimate details about its customers' use of the Lovense devices, including the date and time of each use, the vibration intensity level selected by the user (i.e., the "Usage Information"), and incredibly, the email address of Lovense customers who had registered with the App, allowing Defendant to link the usage information to specific customer accounts.

30. To collect its customers' Usage Information, Defendant designed and programmed the Body Chat App to continuously and contemporaneously intercept and monitor the contents of

CLASS ACTION COMPLAINT                                              7

electronic communications that customers send to their Lovense devices from their smartphones, such as operational instructions to set a desired vibration intensity level. In other words, whenever users interact with their Lovense device through the Body Chat App, Defendant intercepts the content of those interactions sent to the Lovense devices.

31. Defendant also designed and programmed the Body Chat App to transmit the contents of the Usage Information to its servers over and through the internet.

32. Defendant's surreptitious tracking isn't limited to its Body Chat App. Indeed, through its Lovense Wearables and Lovense Remote, Defendant secretly collects information that can reveal users' intimate behaviors, including records of every time a user connects their device to the application along with the user's email and unique Bluetooth identifier.

33. Defendant never obtained consent from any of its customers before intercepting, monitoring, collecting, and transmitting their Usage Information. To the contrary, Defendant concealed its actual data collection policies from its customers knowing (i) that a personal vibrator that monitors, collects, and transmits highly sensitive and intimate usage data back to the manufacturer is worth significantly less than a personal vibrator that does not, and (ii) most, if not all, of its customers would not have purchased a Lovense vibrator in the first place had they known that it would monitor, collect, and transmit their Usage Information.

## FACTS SPECIFIC TO PLAINTIFF S.D.

34. In mid to late 2016, Plaintiff S.D. purchased a Lovense Lush vibrator from Defendant's website for $114, including shipping.

35. The Lovense Lush vibrator's product packaging—like the product packaging of all Bluetooth enabled vibrators in the Lovense line—touted its app-compatibility and Bluetooth functionality.

36. Soon after the purchase, Plaintiff downloaded the Body Chat App onto her smartphone and paired it with her Lovense Lush. She did so in order to access the Lush's full array of features and to control her Lush wirelessly from her smartphone using Bluetooth.

37. Since her purchase of the Lovense Lush, Plaintiff has used the Body Chat App on

CLASS ACTION COMPLAINT                    8

several occasions.

38. Unbeknownst to Plaintiff, Defendant programmed the Body Chat App to secretly intercept, monitor, collect, and transmit her Usage Information.

39. Accordingly, each and every time Plaintiff used the Body Chat App to control her Lovense Lush, Defendant intercepted and collected her personally identifiable Usage Information, and transmitted it to its servers.

40. Defendant never informed Plaintiff that it would monitor, collect, and transmit her Usage Information.

41. Likewise, Plaintiff never provided her consent to Defendant to monitor, collect, and transmit her Usage Information.

42. Plaintiff would never have purchased a Lovense Lush had she known that in order to utilize its full functionality, Defendant would monitor, collect, and transmit her Usage Information through the Body Chat App.

**CLASS ALLEGATIONS**

43. **Class Definitions:** Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of herself and two Classes of similarly situated individuals defined as follows:

> **Purchaser Class**: All individuals in the United States who purchased a Bluetooth-enabled Lovense brand product.
>
> **App Class**: All individuals in the United States who downloaded the Lovense Body Chat mobile application and used it to control a Lovense brand product.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded

CLASS ACTION COMPLAINT 9

persons.

44. **Numerosity**: The exact number of members of the Classes is unknown, but individual joinder in this case is impracticable. The Classes likely consist of tens of thousands of individuals. Members of the Classes can be easily identified through Defendant's records and/or Defendant's retail partners' records.

45. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not limited to the following:

    (a) Whether Defendant's conduct constitutes a violation of the Wiretap Act;

    (b) Whether Defendant's conduct constitutes an intrusion upon seclusion; and

    (c) Whether Defendant was unjustly enriched through its conduct.

46. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes in that Plaintiff and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct.

47. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and she has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Classes.

48. **Superiority**: This class action is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. The damages suffered by the individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct.

CLASS ACTION COMPLAINT            10

Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of the Federal Wiretap Act**
**18 U.S.C. §§ 2510, *et seq*.**
**(On Behalf of Plaintiff and the App Class)**

49. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

50. The Wiretap Act generally prohibits the intentional "interception" of "wire, oral, or electronic communications." 18 U.S.C. § 2511(1).

51. By designing and programming the Body Chat mobile app to contemporaneously monitor, intercept, and transmit the contents of electronic communications that Plaintiff and the App Class members sent to their Lovense devices from their smartphones via Bluetooth, including those containing operational instructions regarding their desired vibration intensity level, Defendant intentionally intercepted and/or endeavored to intercept the contents of "electronic communications," in violation of 18 U.S.C. § 2511(1).

52. Further, by automatically and contemporaneously recording users' communications and then transmitting Plaintiff's and the App Class's Usage Information to its servers, Defendant intentionally used, or endeavored to use, the contents of such electronic communications while knowing or having reason to know that the data was obtained through the interception of an electronic communication.

53. No party to the electronic communications alleged herein consented to Defendant's interception or use of the contents of the electronic communications. Nor could they—Defendant

CLASS ACTION COMPLAINT                 11

never sought to obtain Plaintiff's and the App Class's consent, and each interception occurred concurrently while they used Body Chat to control their Lovense devices. Moreover, Defendant was never a party to any of the communications sent and/or received by Plaintiff and members of the App Class.

54. Plaintiff and the App Class suffered harm as a result of Defendant's violations of the Wiretap Act, and therefore seek (a) preliminary, equitable, and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by Defendant as a result of its unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(2)(B), whichever is greater, (c) punitive damages, and (d) costs and attorneys' fees.

## SECOND CAUSE OF ACTION
### Intrusion upon Seclusion
**(On behalf of Plaintiff and the App Class)**

55. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

56. As explained above, Defendant has intruded upon the seclusion of Plaintiff and each member of the App Class by secretly monitoring, collecting, and transmitting their Usage Information, which revealed specific details regarding their sexual behavior.

57. By designing and programming Body Chat to secretly monitor, intercept, and transmit its customers' Usage Information, Defendant intentionally and knowingly intruded upon the seclusion of Plaintiff's and App Class members' private affairs.

58. Further, Defendant's monitoring, collection, and transmission of Plaintiff's and the App Class members' Usage Information—without their knowledge or consent—is highly offensive to a reasonable person as it reveals intimate private details about their sexual behavior that they believed were confidential.

59. Defendant's intrusion upon Plaintiff's and the App Class members' sexual privacy caused them mental anguish and suffering in the form of embarrassment, humiliation, anxiety, and concern regarding the safety of their Usage Information.

60. Plaintiff and the App Class seek (a) an injunction that prohibits Defendant from monitoring and transmitting Usage Information without informed consent, and requires Defendant to destroy any and all such information currently in its possession, (b) actual damages, including the amount paid for the Lovense devices, and (c) punitive damages, as well as for costs and reasonable attorneys' fees incurred.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Purchaser Class)**

61. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

62. Plaintiff and members of the Purchaser Class conferred a monetary benefit on Defendant when they purchased Lovense products.

63. Defendant appreciates or has knowledge of such benefit.

64. Plaintiff and the Purchaser Class would never have purchased the Lovense products (and would never have conferred any monetary benefit on Defendant) had they known that Defendant secretly programmed its Body Chat App to monitor, collect, and transmit Usage Information about its users without their knowledge or consent.

65. Defendant has unjustly received and retained a benefit as a result of its conduct.

66. Principles of equity and good conscience require Defendant to return the money that Plaintiff and the Purchaser Class paid for the Lovense products.

67. Accordingly, Plaintiff and the Purchaser Class seek the return of the money they paid for the Lovense products, including the disgorgement and restitution of any money received by Defendant as a result of the conduct alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Classes, respectfully requests that the Court enter an Order:

A. Certifying this case as a class action on behalf of the Classes defined above, appointing S.D. as representative of the Classes, and appointing her counsel as class counsel;

CLASS ACTION COMPLAINT                13

B. Declaring that Defendant's actions, as set out above, violate the Wiretap Act and constitute Intrusion Upon Seclusion and Unjust Enrichment;

C. Awarding injunctive relief that (i) prohibits Defendant from intercepting, monitoring, and transmitting its customers' Lovense usage information without their informed consent, and (ii) requires Defendant to destroy any and all such information currently in its possession;

D. Awarding damages, including actual, statutory, and punitive damages, to Plaintiff and the Classes in an amount to be determined at trial;

E. Awarding Plaintiff and the Classes their reasonable attorneys' fees and litigation expenses;

F. Awarding Plaintiff and the Classes pre- and post-judgment interest, to the extent allowable;

G. Awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Classes; and

H. Awarding such other and further relief as the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: January 31, 2018

S.D., individually and on behalf of all others similarly situated,

By: /s/ Rafey S. Balabanian
One of Plaintiff's Attorneys

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily E. Hough (SBN 315277)
lhough@edelson.com
EDELSON PC
123 Townsend Street,
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Classes*

CLASS ACTION COMPLAINT   14