Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily E. Hough (SBN 315277)
lhough@edelson.com
EDELSON PC
123 Townsend Street,
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Classes*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| S.D. individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>HYTTO LTD., D/B/A LOVENSE, a Hong Kong, China corporation,<br><br>*Defendant.* | Case No.: 18-cv-00688<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>(1) **Violation of the Federal Wiretap Act, 18 U.S.C. § 2510**<br>(2) **Intrusion Upon Seclusion; and**<br>(3) **Unjust Enrichment.**<br><br>**DEMAND FOR JURY TRIAL** |

**FIRST AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiff S.D. ("Plaintiff") brings this First Amended Class Action Complaint and Demand for Jury Trial against Defendant Hytto, Ltd. d/b/a Lovense ("Lovense" or "Defendant") for selling products that secretly collect and transmit highly sensitive personally identifiable information about the consumers using them. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

FIRST AMENDED CLASS ACTION COMPLAINT        1        CASE NO. 18-CV-00688

## NATURE OF THE ACTION

1. Defendant Lovense is a "sextech" company that sells a high-end vibrator called "Lush." To fully operate Lush, users download Defendant's "Body Chat" application from the Apple Store or the Google Play store and install it on their smartphones. With Body Chat, users can "pair" their smartphone to Lush, allowing them—and their partners—remote control over the vibrator's settings and features.

2. Unbeknownst to its customers, however, Defendant designed Body Chat to (i) collect and record highly intimate and sensitive data regarding consumers' personal use of its Lovense vibrators, including the date and time of each use and the selected vibration settings ("Usage Information"), and (ii) transmit the Usage Information—along with the user's personal email address—to its servers.

3. Though the data collected from its customers' smartphones is undoubtedly valuable to the company, Defendant's conduct demonstrates a wholesale disregard for consumer privacy rights and violated state and federal laws.

4. As such, Plaintiff brings suit individually and on behalf of all others similarly situated and seeks (i) an injunction prohibiting Defendant from monitoring, collecting, and transmitting consumers' Usage Information, (ii) actual and statutory damages arising from the invasion of their personal privacy, and (iii) actual damages arising from the purchase of their Lovense devices, including the return of the purchase price and disgorgement of profits.

## PARTIES

5. Plaintiff S.D. is a natural person and citizen of the State of Georgia.

6. Defendant Hytto, LTD., is a foreign corporation organized and existing under the laws of the People's Republic of China with its principal place of business located at 12/F AT Tower, No. 180 Electric Road., North Point, Hong Kong. Defendant does business throughout the United States and the State of Georgia, including in this District.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over Plaintiff's

FIRST AMENDED CLASS ACTION COMPLAINT            2                 CASE NO. 18-CV-00688

claim under the Wiretap Act, 18, U.S.C. §§ 2510, a federal statute, and supplemental jurisdiction over Plaintiff's common law claim because it is so related to the federal claim that form part of the same case or controversy under Article III of the United States Constitution. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Classes is a citizen of a different state than the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

8. This Court has personal jurisdiction over Defendant because it conducts business in the United States (including in the State of California), it purposefully directs its business activities toward residents of the United States, and the events underlying this lawsuit arose out of Defendant's business activities in the United States. The claims brought in this lawsuit likewise arise out of business activities in the United States in which Defendant purposefully availed itself of the privilege of conducting business within the United States (and specifically, the State of California), thus invoking the benefits and protections of California law.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts business in this District and a substantial part of the events giving rise to the claims occurred in this District.

**INTRADISTRICT ASSIGNMENT**

10. Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Francisco Division.

**COMMON FACTUAL ALLEGATIONS**

*A Brief Overview of Lovense and Body Chat*

11. In October 2015, Defendant released its Lovense product line, including the Lovense Lush, which enabled customers to remotely control their vibrators from a smartphone.

12. Lovense maintains an interactive website, Lovense.com, where it markets and sells its products. Consumers can create an account on Lovense.com by providing their email address and agreeing to the Terms of Use and Privacy Policy containing, *inter alia*, California-specific

terms.

13. Consumers must create an account in order to purchase Lovense products from Lovense.com. The website's "My Orders" platform provides account holders with specific information about their orders, including their order history and tracking information for products purchased on Lovense.com. The website's "My Profile" platform allows account holders to create a personal profile that includes their name and photo. They can also build a "wish list" on the "Wish List" platform and share their wish lists with third parties by sharing a link, which Defendant creates and provides on the "Wish List" platform. The "Wish List" platform also allows account users to associate a shipping address with their wish list so that they can receive products purchased by third parties from their wish list without disclosing their address to the purchasing party.

14. Account holders can also join Defendant's "Affiliate Program," which allows them to promote Defendant's products with unique referral links and earn a commission on any resulting sales. After creating an account, consumers can join the Affiliate Program by providing Defendant with an active PayPal account and agreeing to additional terms of use. Upon joining the Affiliate Program, affiliates receive access (from their account on Lovense.com) to the "Affiliate Program" platform, where Defendant provides them with unique referral links for each Lovense product, as well as banner advertisements and other marketing materials to create their own advertisements, such as source code for embedding product photos. Affiliates can quickly create their own marketing campaigns by simply copying and pasting the various source code provided by Defendant on the "Affiliate Program" platform.

15. The "Affiliate Program" platform on Lovense.com also provides affiliates access to information regarding their pending referrals, including a breakdown of the products purchased through their links, the country of purchase, the product cost, and the commission earned. The "Affiliate Program" platform allows affiliates to request that Defendant "cash out" their commissions, which Defendant transfers to the affiliate's PayPal account. Affiliates can also sign up, through the platform, to receive updates regarding their referrals and cash out data on a weekly or monthly basis, which Defendant provides in an excel file, via email.

16. Lovense.com is designed to attract and serve a United States audience. It ships products directly to consumers in the United States and provides specific ordering information for United States consumers. The "shipping details" page directs consumers to first select their country from a drop-down menu that lists the United States at the top, followed by other countries in alphabetical order. Consumers who select the United States (which is also the default country selected) are then informed that Defendant will ship the products from within the United States and that the products will reach consumers typically in 2-3 business days. The "shipping details" page calculates specific shipping amounts depending on the country selected, but regardless of the country, the shipping amount is provided in dollars, presumably United States dollars.

17. The Affiliate Program is likewise designed to attract and serve a United States audience. The platform's "Pending Referrals" tab (where affiliates can track their estimated total commission) informs affiliates that they will be automatically cashed out once they reach the minimum threshold, which is $100 (again, presumably United States dollars). Even when the website's language settings are changed to non-English languages, the minimum threshold cash-out value is still provided in dollars, and certain aspects of the marketing materials remain untranslated (i.e., in English). In fact, when the website's language is set to certain non-English languages (for example, Dutch, Italian, Portuguese, Mandarin, etc.), the entire "My Account" platform (including the order platform, affiliate platform, profile platform, wish list platform, etc.) remains in English.

18. Lovense.com also advertises directly to United States consumers. The majority of the featured customer testimonials advertised on Lovense.com, for example, are from United States citizens.

19. Lovense.com ships products directly to consumers through partners in the United States, who store Lovense products in warehouses located in the United States and distribute orders to United States consumers. Defendant also distributes its products for sale in brick and mortar stores throughout the United States—including stores in California and in this District.

20. Lovense also conducts significant business with California-based companies to market and sell its products.

21.     For example, Lovense initiated a fundraising campaign for the Lovense products on www.indiegogo.com, a "crowd-funding" platform operated by the San Francisco based company, Indiegogo, Inc. ("Indiegogo"). For that fundraising campaign, Lovense entered into a contractual agreement with Indiegogo, and agreed to be bound by California choice of law and venue clauses:

> For individuals residing outside the United States, arbitration shall be initiated in the State of California, United States of America, and you and Indiegogo agree to submit to the personal jurisdiction of any federal or state court in San Francisco County, California in order to compel arbitration, to stay proceedings pending arbitration, or to confirm, modify, vacate, or enter judgment on the award entered by the arbitrator.[1]

22.     Additionally, Lovense maintains accounts with California-based companies Facebook, Inc. ("Facebook"), and Twitter, Inc. ("Twitter"), from which it conducts marketing for the Lovense products. Lovense and Facebook have entered in a contractual agreement for this account and have agreed that California law applies and that all disputes will be brought "exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County."[2] Similarly, Lovense and Twitter agreed to resolve all disputes according to California law and bring any claims "solely in the federal or state courts located in San Francisco County, California."[3]

23.     Social media accounts maintained by Lovense interact directly, substantially, and continuously with social media accounts tied to United States residents. For example, the Twitter account maintained by Lovense frequently responds directly to questions posed by United States Twitter users (and ostensibly, consumers of Lovense products) to provide personalized customer support. The Lovense Twitter account has promotional "giveaways" in which it solicits "retweets" from Twitter users and rewards certain users with a free product; United States Twitter users regularly participate and have been selected as winners of the contest on multiple occasions. Defendant at least has constructive knowledge that the Twitter users it interacts with are United

---

[1]     *Terms of Use | Indiegogo*, https://www.indiegogo.com/about/terms (last visited Jan. 12, 2018).
[2]     *(28) Terms of Service*, https://www.facebook.com/legal/terms (last visited Jan. 12, 2018).
[3]     *Terms of Service*, https://twitter.com/en/tos (last visited Jan. 12, 2018).

FIRST AMENDED CLASS ACTION COMPLAINT     6          CASE NO. 18-CV-00688

States residents because their Twitter accounts plainly identify their locations in the United States (and, in the latter example, Defendant ships products to the "giveaway" winners in the United States).

24.     In addition to Indiegogo, Facebook, and Twitter, Lovense uses California-based PayPal, Inc. ("PayPal"), as its online payment processor for the Lovense products, as well as a conduit for its Affiliate Program. Lovense agreed to PayPal's terms including provisions subjecting Lovense to California's jurisdiction.[4]

25.     Lovense utilizes only two methods to publish its mobile applications that control the Lovense products. First, Lovense publishes its Lovense apps in the Apple App Store and entered into a contractual agreement with Apple Inc. ("Apple"), a California headquartered company. In that agreement, Lovense and Apple agreed that "The parties further submit to and waive any objections to personal jurisdiction of and venue in any of the following forums: U.S. District Court for the Northern District of California, California Superior Court for Santa Clara County, Santa Clara County Municipal Court, or any other forum in Santa Clara County, for any disputes arising out of this Agreement."[5]

26.     Second, Lovense publishes its Lovense apps in the Google Play Store and entered into a contractual agreement with Google, Inc., another company headquartered in California. In that contract, Lovense agreed "to submit to the exclusive jurisdiction of the federal or state courts located within the county of Santa Clara, California to resolve any legal matter arising from or relating to this Agreement or your relationship with Google under this Agreement … ."[6]

27.     In other words, Lovense relies heavily on a suite of California companies to market, advertise, fund, sell, distribute, and publish apps for its Lovense products.

---

[4] *PayPal,* https://www.paypal.com/us/webapps/mpp/ua/provt-preview2 (last visited Jan. 12, 2018).
[5] *apple_developer_agreement.pdf*, https://developer.apple.com/programs/terms/apple_developer_agreement.pdf (last visited Jan. 12, 2018).
[6] *Google Play*, https://play.google.com/about/developer-distribution-agreement.html (last visited Jan. 12, 2018).

28. Indeed, to fully take advantage of the Lovense products and to access the product's entire functionality, users must first download one of Defendant's proprietary remote control applications, such as the Body Chat app, shown in Figure 1 (the "Body Chat App"), Lovense Connect, or Lovense Remote from the Apple Store or the Google Play store.



(**Figure 1.**)

29. Once downloaded, the Body Chat App allows users to "pair" (i.e., connect) their Lovense devices to their smartphones using a Bluetooth connection. Through the Body Chat App, Defendant allows users to access and control their Lovense device's full array of features and settings, including the various vibration intensities.

30. Defendant also programmed the Body Chat App to connect the Lovense device to an internet-connected device (such as a smartphone or tablet), which lets users and their partners control and communicate through the paired devices over long distances. With this "Long Distance Control"[7] feature, a user and his or her partner could exchange text messages, engage in video chats, and control their partner's paired Lovense device from remote locations. By connecting the Lovense device(s) to internet-connected devices, the Body Chat App uses the internet to transmit the users'

---

[7] The "Long Distance Control" feature referred to throughout this Complaint refers broadly to any feature of the Lovense product line that enabled Plaintiff and the App Class Members to communicate with their partners over long distances (via the Body Chat App and internet-based communications) by pairing their Lovense device(s) with an internet-connected device.

FIRST AMENDED CLASS ACTION COMPLAINT         8              CASE NO. 18-CV-00688

communications, thus allowing them to interact over long distances.

31. Highlighting the Lovense product line's ability to enable these long-distance interactions between users as a key selling point, Defendant advertises its products—so-called "long distance sex toys"—as "the perfect sex toys for those in long distance relationships."[8]

32. Defendant's website also boasts that the Lovense product line's "Long Distance Control" feature "allows you to give control to someone who is miles away." See Figure 3.



(**Figure 3.**)[9]

33. Defendant also touts that its devices maintain user privacy by promising that users' sensitive data will not pass through or be stored by its servers. See Figure 2. Defendant promises that the data it "pass[es]" along through the App (i.e., user to user communications, such as the long-distance communications referenced above) is encrypted and that it is "nearly impossible for someone" to access user data. See Figure 2.

> Is my data protected?
> We take your privacy very seriously. We have designed our system to record as little information about our users as possible. Absolutely no sensitive data (pictures, video, chat logs) pass through (or are held) on our servers. All data transfers are peer-to-peer. Furthermore, we encrypt the data before passing it along to your partner. The same data encryption technology that Google, Skype, Facetime and others use- It would be nearly impossible for someone to obtain any of the content that is happening on our platform.

(**Figure 2.**)

---

[8] *Our long distance sex toys are the best way to stay intimate!* Lovense.com, https://www.lovense.com/long-distance-sex-toys (last visited August 21, 2018).
[9] *Bluetooth Wireless Remote Control Sex Toys!* Lovense.com, https://www.lovense.com/bluetooth-wireless-remote-control-sex-toys (last visited August 21, 2018).

FIRST AMENDED CLASS ACTION COMPLAINT        9        CASE NO. 18-CV-00688

34. Defendant knows that consumers in the market for internet-connected intimate devices demand privacy and security, which is why Defendant included privacy and security as key selling points of its Lovense product line. By making such representations, Defendant was able to charge a higher price for its vibrators, relative to less secure versions.

### *Defendant Designed Body Chat to Secretly Collect Intimate Usage Data and Communications*

35. By design, the defining feature of the Lovense Lush device is the ability to remotely control it through a mobile app, including through the Body Chat App's "Long Distance Control" feature. Defendant requires customers to use one of its official apps to fully access the Lovense Lush's features and functions. One of those official apps is the Body Chat App. Yet, Defendant fails to notify or warn customers that the Body Chat App monitors and records, in real time, how people use and communicate through these intimate devices and transmits the collected private information to its servers. Nor does Defendant seek consent before it begins collecting and transmitting.

36. Indeed, Defendant programmed the Body Chat App to secretly capture intimate details about consumers' use of the Lovense devices through the Body Chat App, including the date and time of each use, the vibration intensity level selected by App users (i.e., the Usage Information), and incredibly, the email address of individuals sending and receiving commands through the App, allowing Defendant to link the usage information to specific accounts.

37. To capture Usage Information, Defendant designed and programmed the Body Chat App to continuously and contemporaneously intercept and monitor the contents of electronic communications that are sent to Lovense devices from users' smartphones, such as operational instructions to set a desired vibration intensity level. In other words, whenever Body Chat App users interact with a Lovense device through the Body Chat App—including by using the "Long Distance Control" feature—Defendant intercepts the content of all interactions sent to the Lovense devices.

38. Defendant also designed and programmed the Body Chat App to simultaneously transmit the contents of the Usage Information to its servers over and through the internet.

39. Defendant never obtained consent from any of its customers or App users before

intercepting, monitoring, collecting, and transmitting their Usage Information. To the contrary, Defendant concealed its actual data collection policies from its customers and App users knowing (i) that a personal vibrator that monitors, collects, and transmits highly sensitive and intimate usage data and communication information back to the manufacturer is worth significantly less than a personal vibrator that does not, and (ii) most, if not all, of its customers would not have purchased a Lovense vibrator in the first place had they known that it would monitor, collect, and transmit their Usage Information.

## FACTS SPECIFIC TO PLAINTIFF S.D.

40. In mid to late 2016, Plaintiff S.D. purchased a Lovense Lush vibrator from Lovense.com for $114, including shipping.

41. Plaintiff purchased the device because she read online (and confirmed on Lovense.com) that the device could be used for long-distance relationships.

42. Soon after the purchase, Plaintiff downloaded the Body Chat App onto her smartphone and paired it with her Lovense Lush. She did so in order to access the Lush's full array of features, including the ability to allow her device to be controlled remotely (i.e., over the internet) by other App users.

43. Plaintiff also created an account on Lovense.com.

44. Since purchasing the Lovense Lush, Plaintiff has used the Body Chat App's "Long Distance Control" feature, wherein her device would be controlled remotely by a third party over the internet.

45. Unbeknownst to Plaintiff, Defendant programmed the Body Chat App to secretly intercept, monitor, collect, and transmit remote communications sent using the App's "Long Distance Control" feature.

46. Accordingly, each and every time Plaintiff's Lush device was controlled through the Body Chat App's "Long Distance Control" feature, Defendant intercepted and collected those communications, which, at minimum, contained Plaintiff's personally identifiable Usage Information.

47. Defendant never informed Plaintiff (or any user of the App's "Long Distance Control" feature) that it would monitor, collect, and transmit such Usage Information.

48. Likewise, Plaintiff never provided her consent to Defendant to monitor, collect, and transmit her Usage Information.

49. Plaintiff would never have purchased a Lovense Lush had she known that in order to utilize its full functionality (including its functionality for long distance relationships), Defendant would monitor, collect, and transmit her Usage Information through the Body Chat App.

## CLASS ALLEGATIONS

50. **Class Definitions:** Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of herself and two Classes of similarly situated individuals defined as follows:

> **Purchaser Class**: All individuals in the United States who purchased a Bluetooth-enabled Lovense brand product.
>
> **App Class**: All individuals in the United States who downloaded the Lovense Body Chat App and used the App's Long Distance Control feature to control a Lovense brand product.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

51. **Numerosity**: The exact number of members of the Classes is unknown, but individual joinder in this case is impracticable. The Classes likely consist of tens of thousands of individuals. Members of the Classes can be easily identified through Defendant's records and/or Defendant's retail partners' records.

52. **Commonality and Predominance**: There are many questions of law and fact

common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not limited to the following:

    (a)    Whether Defendant's conduct constitutes a violation of the Wiretap Act;

    (b)    Whether Defendant's conduct constitutes an intrusion upon seclusion; and

    (c)    Whether Defendant was unjustly enriched through its conduct.

53. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes in that Plaintiff and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct.

54. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and she has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Classes.

55. **Superiority**: This class action is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. The damages suffered by the individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single

court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of the Federal Wiretap Act**
**18 U.S.C. §§ 2510, *et seq*.**
**(On Behalf of Plaintiff and the App Class)**

56. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

57. The Wiretap Act generally prohibits the intentional "interception" of "wire, oral, or electronic communications." 18 U.S.C. § 2511(1).

58. By designing and programming the Body Chat App to contemporaneously transmit to Defendant (over the internet) the contents of the electronic communications used to control Plaintiff's and the App Class Members' Lovense devices, including those communications received through the App's "Long Distance Control" feature, Defendant intentionally intercepted and/or endeavored to intercept the contents of "electronic communications," in violation of 18 U.S.C. § 2511(1).

59. Further, by transmitting these communications to its servers at the same time the communications were being transmitted over and received through the internet via the Body Chat App, Defendant intentionally used, or endeavored to use, the contents of such electronic communications while knowing or having reason to know that the data was obtained through the interception of an electronic communication.

60. No party to the electronic communications alleged herein consented to Defendant's interception or use of the contents of the electronic communications. Nor could they—Defendant never sought to obtain Plaintiff's and the App Class's consent, and each interception occurred concurrently while they used Body Chat to interact with their partners remotely and over the internet. Moreover, Defendant was never a party to any of the remote communications sent and/or received by Plaintiff and members of the App Class.

61. Plaintiff and the App Class suffered harm as a result of Defendant's violations of the Wiretap Act, and therefore seek (a) preliminary, equitable, and declaratory relief as may be

appropriate, (b) the sum of the actual damages suffered and the profits obtained by Defendant as a result of its unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(2)(B), whichever is greater, (c) punitive damages, and (d) costs and attorneys' fees.

**SECOND CAUSE OF ACTION**
**Intrusion upon Seclusion**
**(On behalf of Plaintiff and the App Class)**

62. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

63. As explained above, Defendant has intruded upon the seclusion of Plaintiff and each member of the App Class by secretly monitoring, collecting, and transmitting their Usage Information, which revealed specific details regarding their sexual behavior.

64. By designing and programming Body Chat to secretly monitor, intercept, and transmit its customers' Usage Information, Defendant intentionally and knowingly intruded upon the seclusion of Plaintiff's and App Class members' private affairs.

65. Further, Defendant's monitoring, collection, and transmission of Plaintiff's and the App Class members' Usage Information—without their knowledge or consent—is highly offensive to a reasonable person as it reveals intimate private details about their sexual behavior that they believed were confidential.

66. Defendant's intrusion upon Plaintiff's and the App Class members' sexual privacy caused them mental anguish and suffering in the form of embarrassment, humiliation, anxiety, and concern regarding the safety of their Usage Information.

67. Plaintiff and the App Class seek (a) an injunction that prohibits Defendant from monitoring and transmitting Usage Information without informed consent, and requires Defendant to destroy any and all such information currently in its possession, (b) actual damages, including the amount paid for the Lovense devices, and (c) punitive damages, as well as for costs and reasonable attorneys' fees incurred.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Purchaser Class)**

68. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

69. Plaintiff and members of the Purchaser Class conferred a monetary benefit on Defendant when they purchased Lovense products.

70. Defendant appreciates or has knowledge of such benefit.

71. Plaintiff and the Purchaser Class would never have purchased the Lovense products (and would never have conferred any monetary benefit on Defendant) had they known that Defendant secretly programmed its Body Chat App to monitor, collect, and transmit Usage Information about its users without their knowledge or consent.

72. Defendant has unjustly received and retained a benefit as a result of its conduct.

73. Principles of equity and good conscience require Defendant to return the money that Plaintiff and the Purchaser Class paid for the Lovense products.

74. Accordingly, Plaintiff and the Purchaser Class seek the return of the money they paid for the Lovense products, including the disgorgement and restitution of any money received by Defendant as a result of the conduct alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Classes, respectfully requests that the Court enter an Order:

A. Certifying this case as a class action on behalf of the Classes defined above, appointing S.D. as representative of the Classes, and appointing her counsel as class counsel;

B. Declaring that Defendant's actions, as set out above, violate the Wiretap Act and constitute Intrusion Upon Seclusion and Unjust Enrichment;

C. Awarding injunctive relief that (i) prohibits Defendant from intercepting, monitoring, and transmitting its customers' Usage Information without their informed consent, and (ii) requires Defendant to destroy any and all such information currently in its possession;

D. Awarding damages, including actual, statutory, and punitive damages, to Plaintiff and the Classes in an amount to be determined at trial;

E.  Awarding Plaintiff and the Classes their reasonable attorneys' fees and litigation expenses;

F.  Awarding Plaintiff and the Classes pre- and post-judgment interest, to the extent allowable;

G.  Awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Classes; and

H.  Awarding such other and further relief as the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: August 24, 2018

S.D., individually and on behalf of all others similarly situated,

By: /s/ Rafey S. Balabanian
One of Plaintiff's Attorneys

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily E. Hough (SBN 315277)
lhough@edelson.com
EDELSON PC
123 Townsend Street,
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Classes*