1   Anna Hsia (SBN 234179)
    ZWILLGEN LAW LLP
2   235 Montgomery Street, Suite 425
3   San Francisco, CA 94104
    Telephone: (415) 590-2335
4   Facsimile:  (415) 636-5965
    anna@zwillgen.com
5
6   Attorneys for Defendant
    **HYTTO LTD., D/B/A LOVENSE**
7

8                   **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10  S.D.,                                  Case No. 4:18-cv-00688-jsw
11          Plaintiff,                      **SPECIALLY APPEARING DEFENDANT
12                                          HYTTO LTD., D/B/A LOVENSE'S NOTICE
                 v.                         OF MOTION AND MOTION TO DISMISS
13                                          PLAINTIFF'S AMENDED COMPLAINT
    HYTTO LTD., D/B/A LOVENSE,              FOR LACK OF PERSONAL
14                                          JURISDICTION AND FOR FAILURE TO
            Defendant.                      STATE A CLAIM**
15
16                                          Judge:  Hon. Jeffrey S. White
17                                          Date:    December 14, 2018
                                            Time:   9:00 a.m.
18                                          Courtroom 5, 2nd Floor
                                            1301 Clay Street
19                                          Oakland, CA 94612
20
21
22
23
24
25
26
27
28

---

DEFENDANT HYTTO LTD., D/B/A LOVENSE'S MOTION TO DISMISS/ CASE NO. 4:18-CV-00688-JSW

1

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

2

**TO THIS HONORABLE COURT, AND TO ALL PARTIES AND TO THEIR**

3

**ATTORNEY OF RECORD:**

4

**PLEASE TAKE NOTICE** that on December 14, 2018 at 9:00 a.m. or as soon thereafter as

5

the matter may be heard before the Honorable Judge Jeffrey S. White, Courtroom 5, 2nd Floor of the

6

United States District Court for the Northern District of California, located at 1301 Clay Street,

7

Oakland, CA 94612, defendant Hytto Ltd. D/B/A Lovense ("Hytto"), by and through its counsel,

8

will and hereby does respectfully move this Honorable Court for an order dismissing the First

9

Amended Complaint ("FAC") (ECF No. 33) of plaintiff S.D., on behalf of herself and all others

10

similarly situated, pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R.

11

Civ. P. 12(b)(6) for failure to state a claim.  This motion is based upon this notice and motion,

12

Hytto's memorandum of points and authorities, the declaration of Chris Dabreo, all other papers

13

submitted and filed with this notice, the pleadings and papers on file in this action, all matters

14

judicially noticeable, and on such further documentary evidence and oral argument as this Court may

15

allow at the hearing.

16

17

DATED:  September 27, 2018                    **ZWILLGEN LAW LLP**

18

19

By:  /s/ Anna Hsia

20

Anna Hsia (SBN 234179)
anna@zwillgen.com
Jeffrey Landis (admitted *Pro Hac Vice*)
jeff@zwillgen.com
**Attorneys for Defendant**
Hytto Ltd., d/b/a Lovense

21

22

23

24

25

26

27

28

1   Anna Hsia (SBN 234179)
    ZWILLGEN LAW LLP
2   235 Montgomery Street, Suite 425
    San Francisco, CA 94104
3   Telephone: (415) 590-2335
    Facsimile:  (415) 636-5965
4   anna@zwillgen.com
5
    Attorneys for Defendant
6   **HYTTO LTD., D/B/A LOVENSE**
7

8                **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10  S.D.,                                | Case No. 4:18-cv-00688-jsw

11          Plaintiff,                   | **MEMORANDUM OF POINTS AND**
                                         | **AUTHORITIES IN SUPPORT OF**
12              v.                       | **SPECIALLY APPEARING DEFENDANT**
                                         | **HYTTO LTD., D/B/A LOVENSE'S**
13  HYTTO LTD., D/B/A LOVENSE,           | **MOTION TO DISMISS**

14          Defendant.                   | Judge:  Hon. Jeffrey S. White
15                                       | Date:    December 14, 2018
                                         | Time:   9:00 a.m.
16                                       | Courtroom 5, 2nd Floor
                                         | 1301 Clay Street
17                                       | Oakland, CA 94612
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

RELEVANT FACTUAL BACKGROUND.............................................................................. 2

    I.    Hytto and its Offerings ................................................................................... 2

    II.    Plaintiff and the Original and Amended Complaints ........................................... 3

ARGUMENT .......................................................................................................................... 4

    I.    The Court Lacks Personal Jurisdiction Over Hytto ............................................. 4

        A.    Hytto Lacks Contacts Sufficient for General Jurisdiction...................... 5

        B.    Hytto Has Not Expressly Aimed its Actions at the United States ........... 5

    II.    Plaintiff's Claims Should Be Dismissed Under Rule 12(b)(6)............................ 7

        A.    Plaintiff's Wiretap Act Claim Should Be Dismissed .............................. 8

            1.    The FAC Lacks the Basic Elements of a Wiretap Act Claim................................................................................... 8

                (i)    Bluetooth Transmissions Do Not Affect Interstate Commerce ...................................................... 9

                (ii)    Device Control Commands Are Not the "Content" of an Electronic Communication Under the Wiretap Act................................................... 11

            2.    Dismissal is Also Warranted Because Plaintiff Alleges Conduct Expressly Permitted by the Wiretap Act..................... 12

                (i)    A Party to the Communication Cannot be Liable for Interception ............................................... 12

                (ii)    Collection of the Usage Information is Otherwise Subject to the Wiretap Act's Ordinary Course of Business Exception ........................................................ 14

        C.    Plaintiff's Common Law Claims Should Be Dismissed........................ 14

CONCLUSION...................................................................................................................... 15

1

## **TABLE OF AUTHORITIES**

2

Page(s)

3

**Cases**

4

*Adobe Systems, Inc. v. Cardinal Camera & Video Center, Inc.*,
    2015 WL 5834135 (N.D. Cal. Oct. 7, 2015) ............................................................ 5-6, 7

5

6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................... 7-8

7

*Axiom Foods, Inc. v. Acerchem Int'l Inc.*,
    874 F.3d 1064 (9th Cir. 2017) ........................................................................................ 6

8

9

*be2 LLC v. Ivanov*,
    642 F.3d 555 (7th Cir. 2011) ..................................................................................... 6-7

10

11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................... 7-8

12

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
    241 F. Supp. 3d 1084 (C.D. Cal. 2017) ......................................................................... 3

13

14

*Crowley v. CyberSource Corp.*,
    166 F. Supp. 2d 1263 (N.D. Cal. 2001) ....................................................................... 12

15

16

*Cruz v. Anheuser-Busch, LLC*,
    2015 WL 3561536 (C.D. Cal. June 3, 2015), aff'd,
    682 Fed. Appx. 583 (9th Cir. 2017) ............................................................................... 3

17

18

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ...................................................................................................... 5

19

20

*DFSB Kollective Co. v. Bourne*,
    897 F. Supp. 2d 871 (N.D. Cal. 2012) ........................................................................... 6

21

22

*Goodyear Dunlop Tires Operations., S.A. v. Brown*,
    564 U.S. 915 (2011) ...................................................................................................... 5

23

24

*Hall v. Earthlink Network*,
    396 F.3d 500 (2d Cir. 2005) ........................................................................................ 14

25

*Hodge v. Mountain States Tel. & Tel. Co.*,
    555 F.2d 254 (9th Cir. 1977) ....................................................................................... 14

26

27

*Holland America Line Inc. v. Wartsila N.A., Inc.*,
    485 F.3d 450 (9th Cir. 2007) ................................................................................. 4-5, 6

28

ii

*Imageline, Inc. v. Hendricks*,
    2009 WL 10286181 (C.D. Cal. Aug. 12, 2009) ...............................................7

*In re Facebook Internet Tracking Litig.*,
    140 F. Supp. 3d 922 (N.D. Cal. 2015)............................................................12

*In re Facebook Internet Tracking Litig.*,
    263 F. Supp. 3d 836 (N.D. Cal. 2017)............................................................15

*In re Google Inc.*,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ...............................................14

*In re Google Cookie Placement*,
     806 F.3d 125 (3d Cir. 2015), *cert. denied sub nom., Gourley v. Google, Inc.*,
    137 S. Ct. 36 (2016) (Mem.).........................................................................13

*In re Google, Inc. Privacy Policy Litig.*,
    2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ...................................................14

*In re Google, Inc. Privacy Policy Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014)..............................................................15

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012)..........................................................12

*In re LDK Solar Sec. Litig.*,
    584 F. Supp. 2d 1230 (N.D. Cal. 2008) ...........................................................2

*In re Nickelodeon Consumer Privacy Litig.*,
    827 F.3d 262 (3d Cir. 2016), *cert. denied sub nom., C.A.F. v. Viacom Inc.*,
    137 S. Ct. 624 (2017)...................................................................................13

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
    781 F. Supp. 2d 955 (N.D. Cal. 2011)............................................................15

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) .................................................................. 11-12

*Indag GmbH & Co. v. IMA S.P.A*,
    150 F. Supp. 3d 946 (N.D. Ill. 2015)...............................................................5

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945).......................................................................................4

*Krise v. SEI/Aaron's Inc.*,
    2017 WL 3608189 (N.D. Ga. Aug. 22, 2017), *appeal dismissed sub nom.,
    Whalen v. SEI/Aaron's, Inc.*, 2018 WL 1419868 (11th Cir. Jan. 25, 2018) ....................10

DEFENDANT HYTTO LTD., D/B/A LOVENSE'S MOTION TO DISMISS/ CASE NO. 4:18-CV-00688-JSW

*Lectrodryer v. SeoulBank*,
    77 Cal. App. 4th 723 (2000) ........................................................................15

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014) ......................................................................5

*NuboNau, Inc. v. NB Labs, Ltd*,
    2012 WL 843503 (S.D. Cal. Mar. 9, 2012) ..................................................7

*Opperman v. Path, Inc.*,
    84 F. Supp. 3d 962 (N.D. Cal. 2015) ...........................................................3

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ..............................................................4, 5, 6

*Pooka Pooka LLC v. Safari Beach Club*,
    2013 WL 12203872 (N.D. Cal. Apr. 17, 2013) ............................................7

*Rene v. G.F. Fishers, Inc.*,
    817 F. Supp. 2d 1090 (S.D. Ind. 2011) .................................................10-11

*Robinson v. Renown Reg'l Med. Ctr.*,
    2016 WL 7031910 (D. Nev. Aug. 23, 2016) ........................................14-15

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ........................................................................6

*Sekisui Am. Corp. v. Hart*,
    15 F. Supp. 3d 359 (S.D.N.Y. 2014) ............................................................3

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007) ................................................................................14

*United States v. Barrington*,
    648 F.3d 1178 (11th Cir. 2011) ..............................................................9-11

*United States v. Pasha*,
    332 F.2d 193 (7th Cir. 1964) ......................................................................13

*United States v. Reed*,
    575 F.3d 900 (9th Cir. 2009) ......................................................................12

*United States v. Ropp*,
    347 F. Supp. 2d 831 (C.D. Cal. 2004) ...................................................10-11

*United States v. Scarfo*,
    180 F. Supp. 2d 572 (D.N.J. 2001) .............................................................10

*Walden v. Fiore,*
    571 U.S. 277 (2014) ...................................................................................6

*Warner Bros. Home Entm't, Inc. v. Shi,*
    2013 WL 12116586 (C.D. Cal. Jan. 29, 2013) ...............................................7

*Yan Mei Zheng-Lawson v. Toyota Motor Corp.,*
    2018 WL 2298963 (N.D. Cal. May 21, 2018) ..............................................15

**Statutes**

Electronic Communications Privacy Act of 1986
    18 U.S.C. § 2510(4) ...................................................................................8
    18 U.S.C. § 2510(5)(a) .............................................................................14
    18 U.S.C. § 2510(8) .................................................................................11
    18 U.S.C. § 2510(12) ..............................................................................8, 9
    18 U.S.C. § 2511(1)(a) ..............................................................................8
    18 U.S.C. § 2511(1)(d)-(i) .......................................................................12

Fed. R. Civ. P. 4(k)(2) ....................................................................... 1, 4- 6

Fed. R. Civ. P. 12(b)(2) .........................................................................4

Fed. R. Civ. P. 12(b)(6) ..................................................................... 7-8

**Other Authorities**

*Bluetooth overview,* Google Developers, https://developer.android.com/guide/topics/
connectivity/bluetooth ...........................................................................3

*Core Bluetooth Framework*, Apple Developer Documentation,
https://developer.apple.com/documentation/corebluetooth .........................................3

Hytto Ltd. (2015). Body Chat [Mobile application software]. Retrieved from
https://itunes.apple.com/us/app/body-chat/id726879092?mt=8https://itunes.apple.com
/us/app/body-chat/id726879092?mt=8 ..............................................................2

Joshua Wright, *Dispelling Common Bluetooth Misconceptions*, SANS Technology Institute,
https://www.sans.edu/cyber-research/security-laboratory/article/bluetooth ...........................3

# INTRODUCTION

Does a smartphone App developer violate the Wiretap Act when users input information into its App and the App collects that information?  Of course not.  But that is Plaintiff's complaint. Plaintiff brings Wiretap Act and common law claims against Hytto, a Hong Kong-based company with no employees or offices in the United States, based on its collection of usage data through its own App.  Because Plaintiff cannot meet her burden of establishing personal jurisdiction or stating a viable claim, her claims must be dismissed.

**First**, this court lacks personal jurisdiction over Hytto.  Headquartered in Hong Kong, with no offices, employees, or real property in the United States, Hytto is not "at home" in the United States, and thus not subject to general jurisdiction under Federal Rule of Civil Procedure 4(k)(2) (the "federal long-arm statute").  Nor is there specific jurisdiction under the federal long-arm statute where Hytto does not direct sales or marketing activities specifically to the United States.  Operating an interactive website accessible in the U.S., or using California-based social media companies for marketing does not suffice.  Otherwise, any foreign company that sells products on a website accessible from the United States could be haled into court in any United States jurisdiction based on decisions by U.S. persons to access such websites or purchase such products.

**Second**, the Amended Complaint fails to state a viable claim.  In the latest iteration of her complaint, Plaintiff narrows her Wiretap Act claim to cover only individuals that used the App with a partner.  In doing so, she includes irrelevant allegations about her text and video communications with other App users, but the alleged misconduct remains the same: Hytto allegedly "intercepted" a Bluetooth transmission of operational commands sent by an App to a sex toy paired with that App.  But the Wiretap Act does not apply to Bluetooth transmissions at all, much less non-content signals used to control connected devices.  And even if it did apply, the Wiretap Act expressly permits this conduct by stating the obvious point that a party to the communication (i.e. Hytto as the App provider) cannot "intercept" a communication.  The conduct would also fall under the Act's "ordinary course of business" exception, which allows collection of communications in the ordinary course of providing the service—such as sending signals to do exactly what the App was intended to do—control the toy.

1

1    The same reasons require dismissal of Plaintiff's common law claims.  Her intrusion upon

2    seclusion claim fails because Hytto was a party to any allegedly intercepted communication, and

3    because the routine collection of usage data by an App is not highly offensive regardless of

4    whether the data pertains to the use of a remote controlled TV, thermostat, or sex toy.  Her unjust

5    enrichment claim fails because she has not adequately alleged that Hytto unjustly retained any

6    benefit it received from her download of the free, optional, App.

7                            **RELEVANT FACTUAL BACKGROUND**

8    **I.    Hytto and its Offerings**

9        Hytto makes adult toys, like the Lovense Lush vibrator purchased by Plaintiff.  FAC ¶¶ 1, 40;

10   Declaration of Chris Dabreo ("Dabreo Decl."), ¶ 3.  Hytto is a Chinese company with its principal

11   place of business in Hong Kong.  *Id.*  It currently has 100 employees, all of whom are located in

12   China, and it has no agents or offices in the United States.  *Id.* ¶ 6.  It has no real property or bank

13   accounts in the United States.  *Id.* ¶¶ 7, 8.  Nor does Hytto directly target print, radio, direct mail or

14   internet advertisements to residents of the United States.  *Id.* ¶ 9.  Like many technology companies,

15   Hytto offers smartphone applications that users can download to their smartphones to use with their

16   Hytto products.  FAC ¶ 28.  One such application, or "App," is Body Chat.  *Id.*  No part of the

17   design or implementation of Body Chat took place in the United States.  Dabreo Decl. ¶ 11.   Body

18   Chat is not needed to use the Lush vibrator or any other Hytto product—customers can use the

19   products without downloading Body Chat.  FAC ¶ 1.[1]

20       Individuals who download Body Chat can pair it with their vibrator and control the vibrator's

21   settings using the App—akin to using a cable company's App to change the channel on a cable box.

22   *Id.* ¶ 29.  The Body Chat App on a user's smartphone communicates with a paired vibrator via

23   _____

24   [1] *See, e.g.*, Hytto Ltd. (2015). Body Chat [Mobile application software]. Retrieved from
     https://itunes.apple.com/us/app/body-chat/id726879092?mt=8https://itunes.apple.com

25   /us/app/body-chat/id726879092?mt=8.  On a motion to dismiss, courts "must consider the
     complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule

26   12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by
     reference, and matters of which a court may take judicial notice." *In re LDK Solar Sec. Litig.*,

27   584 F. Supp. 2d 1230, 1240 (N.D. Cal. 2008) (citations omitted).  The Amended Complaint
     repeatedly refers to Hytto's website and App, and the Apple and Google Play stores.  *See, e.g.*,

28   FAC ¶¶ 12-19, 25, 26, 29-31, 34.

DEFENDANT HYTTO LTD., D/B/A LOVENSE'S MOTION TO DISMISS/ CASE NO. 4:18-CV-00688-JSW

1   Bluetooth.  *Id*.  Bluetooth is a local communication system—its range when used with a smartphone

2   (*i.e.*, "Class 2" Bluetooth) is approximately 10 meters.[2]  Apple and Android operating systems both

3   enable Bluetooth devices like the Lush to communicate directly with apps like Body Chat.[3]

4         Body Chat users can also interact with other individuals (such as romantic partners) that have

5   downloaded the App.  For example, they can exchange text or video messages with such individuals

6   *Id.* ¶ 30.  Nowhere does the Amended Complaint allege that Hytto captures such exchanges.  The

7   App is also designed such that when two people are using the App together, either partner's mobile

8   device can select the vibration intensity for the vibrator.  *Id.* ¶¶ 29-32.  Plaintiff does not allege that

9   the "remote" partner's smartphone communicates directly with the vibrator, as opposed to

10  communicating with the smartphone that is locally paired with the vibrator. Thus, the allegation

11  involving remote communications is essentially the same as those involving local control.

12  **II.    Plaintiff and the Original and Amended Complaints**

13        Plaintiff is a citizen of Georgia.  FAC ¶ 5.  She alleges that she purchased a Lush vibrator

14  from Hytto's website in "mid to late 2016."  *Id.* ¶ 40.  She alleges that she subsequently downloaded

15  the App, and used the device with a third-party, but does not say whether she used the App privately

16  or publicly as a web performer (which was the predominant use of the App at the time Plaintiff

17  ─────────────────────

18  [2] *See* Joshua Wright, *Dispelling Common Bluetooth Misconceptions*, SANS Technology
    Institute, https://www.sans.edu/cyber-research/security-laboratory/article/bluetooth (last visited
19  Sept. 24, 2018).  The Court may take judicial notice of scientific facts which have been well
    established and generally accepted as irrefutable.  *See, e.g., Body Jewelz, Inc. v. Valley Forge*
20  *Ins. Co.,* 241 F. Supp. 3d 1084, 1090 (C.D. Cal. 2017) (citations omitted) (identifying scientific
    facts as "things about which courts ordinarily take judicial notice").

21  [3] Both iOS and Android allow third-party apps to talk to Bluetooth devices.  *See Core Bluetooth*
22  *Framework*, Apple Developer Documentation, https://developer.apple.com/documentation/
    corebluetooth (last visited Sept. 24, 2018) (describing Core Bluetooth Framework); *Bluetooth*
23  *overview,* Google Developers, https://developer.android.com/guide/topics/connectivity/bluetooth
    (last visited Sept. 24, 2018) (describing how Android supports the ability of a device to
24  wirelessly exchange data with other Bluetooth devices). The Court may take judicial notice of
    facts such as the above that are "not subject to reasonable dispute" because they are either
25  "generally known within the trial court's territorial jurisdiction" or "can be accurately and
    readily determined from sources whose accuracy cannot reasonably be questioned."  *Opperman*
26  *v. Path, Inc*., 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015) (citations omitted); *see also Sekisui Am.*
    *Corp. v. Hart*, 15 F. Supp. 3d 359, 366 n.59 (S.D.N.Y. 2014) (taking judicial notice of publicly
27  available ISO standards); *Cruz v. Anheuser-Busch, LLC*, 2015 WL 3561536, at *8 (C.D. Cal.
    June 3, 2015), *aff'd*, 682 Fed. Appx. 583 (9th Cir. 2017) (taking judicial notice of product
28  specifications readily available on manufacturer's website).

DEFENDANT HYTTO LTD., D/B/A LOVENSE'S MOTION TO DISMISS/ CASE NO. 4:18-CV-00688-JSW

1   downloaded it).  *Id.* ¶ 42.

2       Plaintiff filed her original complaint (the "Original Complaint") alleging violations of the

3   Wiretap Act and common law causes of action in January 2018.  *See* ECF No. 1.  In that complaint,

4   she did not allege that she used the App or her vibrator with another person.  *See id.* ¶¶ 34-42.

5   Rather, she claimed that Hytto intercepted communications that she and other class members "sent

6   to their Lovense devices from their smartphones via Bluetooth." *Id.* ¶ 51.  Hytto moved to dismiss

7   the Original Complaint for lack of personal jurisdiction, and for a failure to state a viable claim

8   because the Wiretap Act does not apply to local Bluetooth transmissions such as the one allegedly

9   intercepted, and because Plaintiff failed to allege any communication that was intercepted by a non-

10  participant to the communication.  *See* ECF No. 25.

11      Rather than oppose Hytto's motion to dismiss, Plaintiff filed the Amended Complaint, which

12  differs from the Original Complaint in two main ways.  First, it adds allegations regarding the

13  accessibility of Hytto's website in the United States, presumably in an effort to argue that this Court

14  has jurisdiction over Hytto under Rule 4(k)(2).  *See, e.g.,* FAC ¶¶ 16-17, 19.  Second, Plaintiff

15  narrows her Wiretap Act claim to individuals who "downloaded the Lovense Body Chat App and

16  used the App's Long Distance Control feature to control a Lovense brand product."  *Id.* ¶ 50.  She

17  claims that the App captured "usage information" such as "the date and time of each use" and the

18  "vibration intensity level" selected by such users.  *Id.* ¶¶ 36-37.

19                              **ARGUMENT**

20  **I.    The Court Lacks Personal Jurisdiction Over Hytto**

21      Plaintiff's new allegations regarding the mechanics of Hytto's website do not support a

22  finding of personal jurisdiction.  Courts may exercise personal jurisdiction only where doing so

23  would not violate due process.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006).

24  Traditional due process requires minimum contacts with the forum state such that "maintenance of

25  the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v.*

26  *Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted).  Where a

27  plaintiff seeks to establish jurisdiction under Federal Rule 4(k)(2), rather than considering contacts

28  between defendant and the forum state, courts "consider contacts with the nation as a whole."

4

1    *Holland Am. Line Inc. v. Wartsila N.A., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007).  Plaintiff bears the

2    burden to establish such contacts.  *See Pebble Beach*, 453 F.3d at 1159.  She fails to do so.

### A.    Hytto Lacks Contacts Sufficient for General Jurisdiction

4    Hytto is not subject to the general jurisdiction of this Court under Rule 4(k)(2).  General

5    jurisdiction is appropriate only where a corporation's contacts with the forum state render it

6    "essentially at home" there.  *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (alteration in the

7    original).  When applied under Rule 4(k)(2), "the inquiry becomes whether a defendant's affiliations

8    with the United States are so continuous and systematic as to render it essentially at home in the

9    United States."  *Indag GmbH & Co. v. IMA S.P.A*, 150 F. Supp. 3d 946, 961 (N.D. Ill. 2015).  The

10   "paradigm" fora for general jurisdiction are the company's place of incorporation and principal place

11   of business.  *Daimler*, 571 U.S. at 137.  Only in an "exceptional case" will general jurisdiction be

12   available anywhere else.  *Id.* at 139 n.19.  *See also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070

13   (9th Cir. 2014) (the "Supreme Court's recent decision in *Daimler* makes clear the demanding nature

14   of the standard for personal jurisdiction over a corporation").  Hytto is a Chinese company, with its

15   principal place of business in Hong Kong.  FAC ¶ 6.  It has no employees, offices, or real estate in

16   the United States, and does not pay taxes in the United States.  Dabreo Decl. ¶¶ 6-9.  It is thus not at

17   home in the United States.  *See Indag*, 150 F. Supp. 3d at 961 (finding no general jurisdiction over

18   Italian corporation with its principal place of business in Italy under Rule 4(k)(2)).

### B.    Hytto Has Not Expressly Aimed its Actions at the United States

20   This Court also lacks specific jurisdiction over Hytto.  Specific jurisdiction is limited to

21   "issues deriving from, or connected with, the very controversy that establishes jurisdiction."

22   *Goodyear Dunlop Tires Operations., S.A. v. Brown,* 564 U.S. 915, 919 (2011) (citation omitted).

23   The Ninth Circuit uses a three-part test to determine whether specific jurisdiction exists:

a)  The defendant must purposefully direct its activities or consummate some transaction with the forum or resident thereof . . . thereby invoking the benefits and protections of the forum's laws;

b)  The claim must arise out of or relate to the defendant's forum-related activities; and

c)  The exercise of jurisdiction must comport with fair play and substantial justice. (i.e., the exercise of jurisdiction must be reasonable).

5

1    *Adobe Systems, Inc. v. Cardinal Camera & Video Center, Inc.*, 2015 WL 5834135, at *2 (N.D. Cal.

2    Oct. 7, 2015) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

3    Under Rule 4(k)(2), to satisfy the "purposeful direction" requirement, plaintiff must show that

4    defendant expressly aimed its actions at the United States.  *See Pebble Beach*, 453 F.3d at 1159.

5         The relationship between the defendant's suit-related conduct and the forum state "must arise

6    out of [a] contact[] that the defendant *himself* creates with the forum state."  *Walden v. Fiore*, 571

7    U.S. 277, 284 (2014).  That is why "the minimum contacts analysis examines the defendant's

8    contacts with the forum State itself, not the defendant's contacts with persons who reside there."

9    *Axiom Foods, Inc. v. Acerchem Int'l Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotations

10   and citations omitted).  Here, Hytto did not aim any intentional acts at the United States.[4]  Plaintiff

11   points to Hytto's (1) offering of an interactive website accessible in the United States; (2) offering of

12   products for sale; and (3) use of companies like Facebook or Twitter for marketing.  None suffice.

13        First, merely offering an interactive website accessible in the United States does not establish

14   express aiming sufficient for jurisdiction.  Plaintiff alleges that consumers "must create an account"

15   to purchase products from Lovense.com, and that individuals can join Hytto's "affiliate program"

16   via its website.  *See* FAC ¶¶ 13-14.  But Plaintiff does not allege that such interactivity was targeted

17   to United States users.  *See Holland*, 485 F.3d at 462 (no jurisdiction under Rule 4(k)(2) where

18   defendant's website "is not targeted to the United States"); *DFSB Kollective Co. v. Bourne*, 897 F.

19   Supp. 2d 871, 882 (N.D. Cal. 2012) (rejecting argument that "any defendant that operates a

20   commercial website with infringing content which requires users to register with the site can be

21   haled into court in any state in the United States because the defendant has directed its activities at

22   each state regardless of whether or how that registration information is used"); *be2 LLC v. Ivanov*,

---

23

24   [4] The Complaint appears to assert jurisdiction under Rule 4(k)(2), but without specifically citing

25   the rule.  *See* FAC ¶ 8 ("This Court has personal jurisdiction over Defendant because it conducts business in the United States (including in the State of California), it purposefully directs its

26   business activities toward residents of the United States, and the events underlying this lawsuit arose out of Defendant's business activities in the United States.").  If Plaintiff is claiming

27   jurisdiction based on Hytto's contacts with California, personal jurisdiction is also lacking because Plaintiff is a Georgia citizen who does not claim to have purchased her toy or used the

28   App in California.  This Court's exercise of jurisdiction would also be unreasonable under the factors set forth in *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004).

DEFENDANT HYTTO LTD., D/B/A LOVENSE'S MOTION TO DISMISS/ CASE NO. 4:18-CV-00688-JSW

1    642 F.3d 555, 559 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly

2    interactive' website, that is accessible from, but does not target, the forum state, then the defendant

3    may not be haled into court in that state without offending the Constitution.").

4          Second, the sale of products into the United States does not suffice to establish specific

5    jurisdiction.  "Random, fortuitous, or attenuated contacts with individuals in the forum are

6    insufficient to support personal jurisdiction." *Adobe Systems Inc.*, 2015 WL 5834135, at *5 (internal

7    quotations and citations omitted).   Plaintiff does not allege in any non-conclusory way that Hytto

8    targets advertisements to the U.S., markets products specifically intended for a U.S. audience, or in

9    any other way directs its sales activities to the U.S. as opposed to elsewhere. *Id.*  Under such

10   circumstances, there is no express aiming. *Id; see also Imageline, Inc. v. Hendricks*, 2009 WL

11   10286181, at *4 (C.D. Cal. Aug. 12, 2009) (holding that defendants' sales to forum residents were

12   not specifically directed contacts, but instead occurred only because the purchasers happened to

13   reside there); *Warner Bros. Home Entm't, Inc. v. Shi,* 2013 WL 12116586, at *5 (C.D. Cal. Jan. 29,

14   2013) (no prima facie case for express aiming without allegations of specific intent to target forum

15   consumers).

16         Third, Hytto's use of "California-based" social media companies for marketing also does not

17   manufacture jurisdiction. *See, e.g., NuboNau, Inc. v. NB Labs, Ltd,* 2012 WL 843503, at *6 (S.D.

18   Cal. Mar. 9, 2012) ("[T]he Court doesn't find that merely engaging Twitter and Facebook to

19   promote one's business constitutes purposeful direction at California, simply because Twitter and

20   Facebook happen to be based there.")*; Pooka Pooka LLC v. Safari Beach Club*, 2013 WL 12203872,

21   at *5 (N.D. Cal. Apr. 17, 2013) (accepting notion that use of California headquartered Internet

22   companies is sufficient to establish jurisdiction "**would render the 'expressly aimed' prong of the**

23   *Calder* **test essentially meaningless as it has become ubiquitous for businesses-large and small-**

24   **to maintain Facebook and/or other similar accounts for marketing purposes . . .**") (emphasis in

25   original).

26   **II.     Plaintiff's Claims Should Be Dismissed Under Rule 12(b)(6)**

27         Even if jurisdiction existed, Plaintiff fails to state a claim under Rule 12(b)(6).  A complaint

28   "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

7

1  its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Labels, conclusions and

2  "formulaic recitation[s]" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

3  Stripping away labels and conclusions, the Amended Complaint states no plausible claim.

4       **A.**    <u>**Plaintiff's Wiretap Act Claim Should Be Dismissed**</u>

5       Plaintiff asks this court to do two things that no court has done before: (1) apply the

6  Wiretap Act to local Bluetooth communications; and (2) treat pre-programmed remote control

7  signals from one device to another as "contents" of communications. No court has ever taken

8  either step because they are both wrong. Plaintiff's Wiretap Act claim must be dismissed because

9  she does not properly allege an interception in interstate commerce involving the contents of an

10  electronic communication. Even if she did, the allegations describe conduct expressly permitted

11  by the Act.

12       **1.**    **The FAC Lacks the Basic Elements of a Wiretap Act Claim**

13       The Wiretap Act makes it unlawful to "intentionally intercept[ ] [or] endeavor[ ] to

14  intercept . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The Act

15  defines "intercept" as the acquisition of "contents" of any "electronic communication" through the

16  use of any electronic, mechanical, or other device. 18 U.S.C. § 2510(4). To qualify as an

17  "electronic communication," the data must be "transmitted in whole or in part by a . . . ***system that***

18  ***affects interstate or foreign commerce***." *Id.* § 2510(12) (emphasis added). Plaintiff thus must

19  allege Hytto (a) intercepted contents of an electronic communication (b) transmitted via a system

20  affecting interstate commerce. *Rene v. G.F. Fishers, Inc.*, 817 F. Supp. 2d 1090, 1093 (S.D. Ind.

21  2011). She fails on both.

22       Plaintiff attempts to sensationalize her complaint by alleging that App users can

23  communicate by text and video chat—but she does *not* allege that Hytto intercepted those

24  communications. She alleges only that Hytto intercepted "Usage Information," *i.e.* pre-

25  programmed *operational instructions* such as the device's intensity level. *See* FAC ¶¶ 29, 37.

26  Plaintiff alleges that (1) a partner sends Usage Information from his or her App to another user's

27  App; (2) that user's App transmits the Usage Information to the Lovense device via Bluetooth; and

28  (3) Hytto "intercepts" the Bluetooth transmission of the Usage Information from the App to the

DEFENDANT HYTTO LTD., D/B/A LOVENSE'S MOTION TO DISMISS/ CASE NO. 4:18-CV-00688-JSW

1   Lovense device.  *See* FAC ¶ 37 ("whenever Body Chat App users interact with their Lovense

2   device through the Body Chat App—including by using the 'Long Distance Control' feature—

3   Defendant intercepts the content of all interactions sent to the Lovense device.").  Stripped of

4   allegations unrelated to the interception, Plaintiff has a single complaint: Hytto records what

5   commands are entered into the Body Chat App and sent to the toy via Bluetooth.  This does not

6   state a claim.

7                          (i)        **Bluetooth Transmissions Do Not Affect Interstate Commerce**

8           First, the interception did not occur on "a system that affects interstate or foreign

9   commerce."  *See* 18 U.S.C. § 2510(12).  Bluetooth is a local transmission system between two

10  physically proximate devices that does not touch interstate commerce.  To avoid this fatality,

11  Plaintiff tries to narrow her claim to only those instances where class members use their toy with a

12  partner.  *See* FAC ¶ 50.  But the actual (and fatally flawed) interception allegation remains the

13  same:  Hytto allegedly intercepted the Bluetooth transmission of Usage Information from the App

14  to the toy.

15          A Bluetooth transmission between a smartphone app and a wireless device is like a

16  transmission between a keyboard and a computer, which courts repeatedly find outside the scope

17  of the Wiretap Act.  In *United States v. Barrington*, college students installed keylogger software

18  on computers to acquire employees' passwords and then used those passwords to change their

19  grades.  *Id*. at 648 F.3d 1178, 1183–84 (11th Cir. 2011).  The software "covertly recorded the

20  keystrokes made by Registrar employees as they signed onto their computers, capturing their

21  usernames and passwords," and then automatically transmitted them to the students' email

22  accounts.  *Id*.  Because there was no evidence that the software had the capacity to intercept

23  information being transmitted beyond the user's computer, the Eleventh Circuit found that the

24  software was not a device that could be used to intercept an electronic communication.  *Id* at

25  1202–3.  The court reasoned that "use of a keylogger will not violate the Wiretap Act if the signal

26  or information captured from the keystrokes is not at that time being transmitted beyond the

27  computer on which the keylogger is installed (or being otherwise transmitted by a system that

28  affects interstate commerce)."  *Id*. at 1202.

9

The court in *Rene v. G.F. Fishers, Inc.* reached the same conclusion.  There, plaintiff alleged that use of a keystroke logger to intercept the transmission of her keystrokes as she typed passwords into a computer violated the Wiretap Act.  *Rene*, 817 F. Supp. 2d at 1093.  Defendants moved to dismiss, arguing that there could be no Wiretap Act "interception" because the system transmitting information between the keyboard and computer did not affect interstate or foreign commerce.  *Id.*  The district court, adopting *Barrington*, agreed, finding that in order to violate the Wiretap Act the "interception must occur while the transmission is traveling through a system that affects interstate or foreign commerce."  *Id.* at 1093-94.  The court explained:

> The key to the *Barrington* decision lies in the fact that the transmission of keystrokes exists internally on a computer.  The relevant 'interception' acted on a system that operated solely between the keyboard and the local computer, and captured a transmission that required no connection with interstate or foreign commerce to reach its destination.  *Id.* at 1094.

Other courts have reached similar conclusions.[5]

     In an effort to distinguish this case from the keylogger cases, Plaintiff alleges that Usage Information *previously* traveled in interstate commerce. But this is irrelevant.  In *Rene*, the defendants allegedly intercepted their coworker's keystrokes as she accessed her personal email and checking accounts on the Internet.  817 F. Supp. 2d at 1092.  But the court found that to violate the Wiretap Act, the interception "must occur while the transmission is traveling through a system that affects interstate or foreign commerce."  *Id.* at 1094.  The fact that the keystrokes were traversing the Internet simultaneously as plaintiff accessed online banking or sent emails did not change the fact that the plaintiff's Wiretap Act allegation concerned only a system that did *not* affect interstate commerce. *Ropp* likewise found that a keyboard-computer system did not affect

---

[5] *See United States v. Ropp*, 347 F. Supp. 2d 831, 834 (C.D. Cal. 2004) (holding that whether intercepted signals were electronic communications "turns on whether the signals were transmitted 'by a system . . . that affects interstate or foreign commerce'"); *United States v. Scarfo*, 180 F. Supp. 2d 572, 581 (D.N.J. 2001) (dismissing Wiretap Act indictment where software did not "search for and record data entering or exiting the computer from the transmission pathway through the modem attached to the computer"); *Krise v. SEI/Aaron's Inc.*, 2017 WL 3608189, at *10 (N.D. Ga. Aug. 22, 2017) (software capturing transmissions between keyboard and computer not capturing electronic communications affecting interstate commerce), *appeal dismissed sub nom.*, *Whalen v. SEI/Aaron's, Inc.*, 2018 WL 1419868 (11th Cir. Jan. 25, 2018).

interstate commerce, even when composing emails transmitted over the Internet.  347 F. Supp. 2d

831, 837-38 (C.D. Cal. 2004).  The same reasoning applies here—the local toy-App

communication is not itself on a system affecting interstate commerce, even if the information

going to the toy originated from a partner (who could be in another state or also the same room).[6]

**(ii)     Device Control Commands Are Not the "Content" of an
Electronic Communication Under the Wiretap Act**

Plaintiff's claim also fails because Usage Information is not "content" under the Wiretap

Act.  The Act defines "content" as "information concerning the substance, purport, or meaning of

that communication."  18 U.S.C. § 2510(8).  "Congress intended the word 'content' to mean a

person's intended message to another (i.e., the 'essential part; of the communication, the 'meaning

conveyed' and the 'thing one intends to convey.')"  *In re Zynga Privacy Litig.*, 750 F.3d 1098,

1106 (9th Cir. 2014).  Emails are a prime example of "content" falling within the Wiretap Act.

Usage Information (e.g. date and time of use and vibration level) is not "content."  Usage

Information lacks words and any intended message.  Usage Information is just directions entered

into the App causing it to vary the speed of the sex toy, the same way another App might control

the speed of a ceiling fan.  If operational commands were "content" under the Wiretap Act, the

Act would encompass remote control signals sent by hundreds of devices, such as thermostats,

televisions, lights, fans, car ignitions, or any other item that can be remotely controlled.

Courts reject this broad reading of "content."  In *In re Zynga*, the Ninth Circuit held that

referrer header information—the portion of a webpage that provides the address of the webpage

from which the request was sent—did not meet the Wiretap Act definition of "content."  *Id.* at

1106-7.  The court explained that "the term 'contents' refers to the intended message conveyed by

the communication, and does not include record information regarding the characteristics of the

---

[6] Also irrelevant is Plaintiff's allegation that the intercepted information was subsequently
transmitted to Hytto's servers.  *See* FAC ¶ 38.  In both *Barrington* and *Rene*, the intercepted
keystrokes were automatically emailed to defendants over a network connection affecting
interstate commerce (the email servers of the email provider), but that did not change the result.
*See Barrington*, 648 F.3d at 1184; *Rene*, 817 F. Supp. 2d at 1092.  Indeed, *Ropp* expressly
rejected such an argument, finding that "[t]he network connection [was] irrelevant to the
transmissions, which could have been made on a stand-alone computer that had no link at all to
the internet or any other external network."  347 F. Supp. 2d at 838.  So too here.

11

message that is generated in the course of the communication." *Id.* Webpage addresses merely identified the location of the webpage a user is viewing on the Internet and conveyed no meaning to qualify as content under the Act. *Id.* at 1107. Similarly, in *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922 (N.D. Cal. 2015), the court held that the identity of webpages that the users visited and the users' unique identification information did not qualify as content under the Wiretap Act. *Id.* at 935. The court reached this decision even though Facebook could indisputably glean information about a person based on their browser history.

So too here. Usage Information is not the "essential part" of a communication by Plaintiff or a "thing she intends to convey" to anyone. *In re Zynga Privacy Litig.*, 750 F.3d at 1106. Nor is it information she "intended to communicate, such as words spoken in a phone call." *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1061 (N.D. Cal. 2012). It is simply transactional records generated when the App controls the settings on the vibrator. The fact that the vibration levels are selected using the App as opposed to a + or – button on the toy itself does not make records of those levels "contents" under the Wiretap Act. *See United States v. Reed*, 575 F.3d 900, 916 (9th Cir. 2009) (noting, "data that is incidental to the use of a communication device" contains no "content or information that the parties intended to communicate").

### 2. Dismissal is Also Warranted Because Plaintiff Alleges Conduct Expressly Permitted by the Wiretap Act

Plaintiff's Wiretap Act claims must also be dismissed because the alleged conduct is permitted by the Act. *See, e.g.*, 18 U.S.C. § 2511(1)(d)-(i).

### (i) A Party to the Communication Cannot be Liable for Interception

A party to a communication does not intercept that communication. The Wiretap Act thus precludes liability where a party "acted as no more than the second party to [that] communication." *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001).

But Plaintiff claims that the Hytto App intercepts Usage Information a user inputs into the Hytto App—alleging that when users "interact with a Lovense device through the Body Chat App . . . Defendant intercepts the content of all interactions sent to the Lovense devices." FAC ¶ 37; *see also id.* ¶ 36 ("Defendant programmed the Body Chat App to secretly capture intimate

12

1   details . . . including . . . the vibration intensity selected by App users."). These are not allegations

2   of interception; they are allegations that the App records how it is used—like apps do. Plaintiff

3   takes no issue with the App collecting Usage Information directly, since she or a partner submitted

4   it to the App. Instead, she takes issue with Hytto "intercepting" that Usage Information when it is

5   transmitted to the toy. But even accepting as true Plaintiff's mischaracterization that Usage

6   Information sent between the App on Plaintiff's phone and the toy is being intercepted (as

7   opposed to merely collected by the App), there can be no Wiretap claim because Hytto—as the

8   App provider—was the second party to that "communication."

9        Wiretap Act cases brought against companies who placed cookies on computers to

10   facilitate internet advertising provide a useful parallel. In *In re Google Cookie Placement*,

11   plaintiffs alleged that internet advertisers acquired the plaintiffs' internet history when, in the

12   course of requesting webpage advertising content, the plaintiffs' browsers sent information to

13   defendants via a cookie defendants placed on their computers. 806 F.3d 125, 142 (3d Cir. 2015),

14   *cert. denied sub nom., Gourley v. Google, Inc.*, 137 S. Ct. 36 (2016) (Mem.). The theory was that

15   once placed, the cookie would "intercept" plaintiffs' communications and transmit them back to

16   defendants. The Third Circuit affirmed dismissal of the Wiretap Act claim on the ground that

17   defendants were parties to the communication. *Id.*; *see also United States v. Pasha*, 332 F.2d 193,

18   198 (7th Cir. 1964) (noting that "officer did not 'intercept' a message while it was en route to

19   another; there was no other on the line"); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d

20   262, 274 (3d Cir. 2016) (affirming Wiretap Act dismissal where "Google was either a party to all

21   communications with the plaintiffs' computers" or allowed to communicate with them by a party),

22   *cert. denied sub nom., C.A.F. v. Viacom Inc.*, 137 S. Ct. 624 (2017).

23        Here, Body Chat users input Usage Information into the App, to be transmitted from the

24   App to the toy. In other words, the App, i.e. Hytto, is the sender of the communication. If Hytto

25   is not a party to the communication, there is no second party—Plaintiff (or her partner) would

26   simply be communicating with themselves in much the same way they may use a remote control

27   to communicate with a TV in the same room, or an app to fly a drone. No court has found the

28   Wiretap Act applies to such communications.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> **(ii)     Collection of the Usage Information is Otherwise Subject to the Wiretap Act's Ordinary Course of Business Exception**

Finally, Plaintiff's Wiretap Act claim fails because the alleged interception falls within the Wiretap Act's ordinary course of business exception. *See* 18 U.S.C. § 2510(5)(a) (excluding from definition of intercept those devices being used by a provider in the ordinary course of its business). Even those district courts construing the exception narrowly find that it applies "where an electronic communication service provider's interception facilitates the transmission of the communication at issue or is incidental to the transmission of such communication." *In re Google Inc.*, 2013 WL 5423918, at *8 (N.D. Cal. Sept. 26, 2013).

Plaintiff's own allegations demonstrate this is the case here. The Amended Complaint claims that the App was designed to pair with a user's toy to control the toy. *See* FAC ¶ 29. Indeed, it calls the toy's ability to be controlled by the App the toy's "defining feature." *Id.* ¶ 35. Hytto's collection of Usage Information facilitates that function and thus falls within the ordinary course exception. *See, e.g., In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at * 10 (N.D. Cal. Dec. 3, 2013) (finding that Google's collection of information for purposes of its "core targeted advertising" satisfied ordinary course exception); *see also Hall v. Earthlink Network Inc.*, 396 F.3d 500 (2d Cir. 2005) (finding that Earthlink's continued processing of email after user cancelled account satisfied ordinary course exception where Earthlink processed such email using its routers, servers and other computer equipment as part of its e-email service to all customers).

**C.     Plaintiff's Common Law Claims Should Be Dismissed**

The Court should also dismiss Plaintiff's intrusion upon seclusion and unjust enrichment claims, both of which fail as a matter of law.[7]  Intrusion upon seclusion requires: (1) an intrusion into a private place, conversation, or matter, (2) in a manner highly offensive to a reasonable person. *Taus v. Loftus*, 40 Cal. 4th 683, 725 (2007).  But there can be no intrusion (much less a highly offensive one) where Hytto was a party to the communication. *Robinson v. Renown Reg'l*

---

[7] Where federal claims fail, pendent state law claims should be dismissed. *See, e.g., Hodge v. Mountain States Tel. & Tel.* Co., 555 F.2d 254, 261 (9th Cir. 1977).

1  *Med. Ctr.*, 2016 WL 7031910, at *4 (D. Nev. Aug. 23, 2016) (no intrusion on a reasonable

2  expectation of privacy in words already conveyed to a third party).  And because it is commonly

3  understood that when a person uses an app, the app collects information about that usage, such

4  "routine internet functionality" is not "highly offensive," regardless of the device used, whether

5  headphones, a drone, or an adult toy.  *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d

6  836, 846 (N.D. Cal. 2017); *see also In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968,

7  988 (N.D. Cal. 2014) (finding Google's collection of browsing histories (which could include

8  sexual content), "do[es] not plausibly rise" to the necessary level of intrusion).

9          Plaintiff also has not adequately alleged a claim for unjust enrichment.  Courts in this

10  district require an unjust enrichment claim to be asserted under a specific state's law.  *Yan Mei*

11  *Zheng-Lawson v. Toyota Motor Corp.,* 2018 WL 2298963, at *3 (N.D. Cal. May 21, 2018)

12  (holding that where unjust enrichment is not asserted under California law or under any particular

13  state's law, it is subject to dismissal on that basis); *see also In re TFT–LCD (Flat Panel) Antitrust*

14  *Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011) ("Several other courts in this district have

15  similarly held that a plaintiff must specify the state under which it brings an unjust

16  enrichment claim.").  Plaintiff's unjust enrichment claim is not asserted under California law, or

17  any other state's law, and should be dismissed for that reason alone.  *See* FAC ¶¶ 68-74.

18          Her unjust enrichment claim also fails because under California law, unjust enrichment

19  requires: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another.

20  *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).  Plaintiff does not allege in a non-

21  conclusory manner what benefits Hytto unjustly retained at her expense.  Plaintiff received the toy

22  and functionality she purchased.  Hytto's receipt and retention of the purchase price cannot be

23  "unjust."  And Plaintiff does not adequately allege that by downloading the free App she conveyed

24  a benefit to Hytto that can (let alone should) be returned.

25                                    **CONCLUSION**

26          Based on the foregoing, Hytto respectfully requests dismissal of this action based on a lack of

27  personal jurisdiction and failure to state a claim upon which relief can be granted.

28

1   DATED:  September 27, 2018          **ZWILLGEN LAW LLP**

2

3                                        By:  /s/ Anna Hsia
                                              Anna Hsia (SBN 234179)
4                                             anna@zwillgen.com
                                              Jeffrey Landis (admitted *Pro Hac Vice*)
5                                             jeff@zwillgen.com
                                              **Attorneys for Defendant**
6                                             Hytto Ltd., d/b/a Lovense

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT HYTTO LTD., D/B/A LOVENSE'S MOTION TO DISMISS/ CASE NO. 4:18-CV-00688-JSW