1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

S.D.,

             Plaintiff,

     v.

HYTTO LTD., D/B/A/ LOVENSE,

             Defendant.

Case No.  18-cv-00688-JSW

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Re: Dkt. No. 36

     Now before the Court is the motion to dismiss filed by Defendant Hytto Ltd., d/b/a Lovense ("Hytto").  The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument.  *See* Civil L.R. 7-1(b).  For the reasons set forth below, the Court HEREBY GRANTS in part and DENIES in part Hytto's motion to dismiss and grants S.D. leave to amend.

## BACKGROUND

     Hytto is a Chinese company with its principle place of business in Hong Kong.  (First Amended Complaint ("FAC") ¶ 6.)  Hytto markets and sells vibrators and other sex toys through its website.  (*Id.* ¶ 12-27.)  In October of 2015, Hytto released its "Lovense" product line, including a "high-end" vibrator called the "Lush," which S.D. purchased.  (*Id.* ¶¶ 1, 11.)

     Hytto sells the products in this line on Lovense.com.  (*Id.* ¶ 12.)  Consumers must create an account in order to purchase Lovense products from this website.  (*Id.* ¶ 13.)  Hytto offers what it calls an "Affiliate Program," which allows customers with accounts to promote its products and earn a commission on resulting sales.  (*Id.* ¶ 14.)  Lovense.com ships products to the U.S. (from within the U.S., using U.S.-based distributors) and provides tailored ordering information for consumers located in the U.S.  (*Id.* ¶¶ 16, 19.)  The default shipping destination on Lovense.com is

the U.S.  (*Id.* ¶ 16.)  The shipping cost and other monetary amounts on the website are in U.S. dollars.  (*Id.* ¶¶ 16, 17.)  English is the default language of the website, and certain materials on the website are only available in English.  (*See id.* ¶ 17.)  The majority of the customer testimonials featured on the website are from customers located in the U.S.  (*Id.* ¶ 18.)  Hytto's U.S. customer base is significant to its business: users from the U.S. visit Hytto's website more frequently than any other country and comprise approximately 40% of Lovense.com's web traffic; Hytto has shipped nearly 100,000 products to the U.S.; and approximately 34,000 users in the U.S., including S.D., have downloaded the so-called Body Chat application (explained below). (Declaration of Rafey S. Balabanian ("Balabanian Decl.") ¶¶ 2-4.)

Though Lovense products may be used without downloading an app, to access a Lovense product's "entire functionality," Lovense customers may download one of Hytto's applications or "apps," such as the Body Chat app.  (FAC ¶¶ 28, 35.)  Once a user downloads Body Chat, he or she may "pair" (*i.e.*, connect) his or her Lovense device to a smartphone using a Bluetooth connection.  (*Id.* ¶¶ 29, 30.)  This facilitates users and their partners' control of a Lovense device or devices over "long distances."  (*Id.* at ¶ 30.)  When two people use the app together, either partner's mobile device can select and transmit the vibration intensity for the paired Lovense device.  (*Id.* ¶¶ 29-32.)  When the "remote" partner selects the vibration intensity for the paired device, the Body Chat app on his or her phone transmits his or her choice over the internet to the "local" partner's smartphone and Body Chat app, which then relays the selected intensity via Bluetooth to the paired device.  The Body Chat app, according to the FAC, "continuously and contemporaneously intercept[s]" and transmits to Hytto's servers, the date and time of each use of the paired Lovense device(s), the vibration intensity level users select using the app, and the email address of users sending and receiving commands.  (*Id.* ¶¶ 36-38.)

S.D. brings three causes of action against Hytto: (i) violation of the Federal Wiretap Act ("Wiretap Act" or the "Act"), 18 U.S.C. §§ 2510 *et seq.*, (ii) intrusion upon seclusion, and (iii) unjust enrichment.  Hytto argues that this Court cannot exercise personal jurisdiction over it and that S.D. has failed to state a claim for each of these causes of action.

The Court will address additional facts as necessary below.

**ANALYSIS**

**A.      Applicable Legal Standards.**

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing that personal jurisdiction over a defendant is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). When a district court rules on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations omitted); *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1082 (C.D. Cal. 2003) (when considering jurisdictional issues, appropriate to look beyond pleadings to any evidence before the court). A court must accept all uncontested allegations in the plaintiff's complaint as true, and conflicts between the parties over statements contained in affidavits must be resolved in favor of the plaintiff. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

A motion to dismiss is proper under Federal Rule of Civil Procedure Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. When considering a motion to dismiss, a court construes the complaint in the light most favorable to the non-moving party and accepts all material allegations in the complaint as true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). A court's inquiry is confined to the allegations in the complaint. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). The Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

**B.      Personal Jurisdiction Under Rule 4(k): A Series of Three-Part Tests.**

There are two types of personal jurisdiction: general and specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General personal jurisdiction exists where a defendant's affiliations with the state are such that the defendant is essentially at home there. *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In contrast, a court may exercise

United States District Court
Northern District of California

3

specific personal jurisdiction over a defendant where the cause of action arises from the defendant's contacts with the forum state and certain due process considerations are met. *Id.* S.D. does not argue that Hytto is subject to general personal jurisdiction in the U.S. Accordingly, this Court confines its analysis to whether Hytto is subject to specific personal jurisdiction in the U.S. under Fed. R. Civ. P. 4(k).

### 1.   Rule 4(k)(2).

The existence of personal jurisdiction under Rule 4(k)(2) is dependent upon a three-part test: (i) the claim must arise under federal law; (ii) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; and (iii) the court's exercise of personal jurisdiction must comport with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). The only difference between traditional personal jurisdiction analysis and analysis under Rule 4(k)(2) is that, when applying Rule 4(k)(2), a court focuses on a defendant's contacts with the U.S. as a whole rather than on contacts with a particular forum state. *Id.*

S.D.'s Wiretap Act claim arises under federal law, and there is no suggestion before the Court that Hytto is subject to the personal jurisdiction of any state court of general jurisdiction. (*See* Dkt. No. 36-1 (Declaration of Chris Dabreo) ¶ 5.) Personal jurisdiction under Rule 4(k)(2) is therefore appropriate if this Court's exercise of personal jurisdiction comports with due process (discussed below).

### 2.   Specific Personal Jurisdiction.

Specific personal jurisdiction is limited to "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (citation omitted). The Ninth Circuit applies another three-part test to determine whether a court may exercise specific personal jurisdiction over a non-resident defendant. Under this test: (i) the defendant must have purposefully directed his activities to the forum or purposefully availed himself of the forum, thereby invoking the benefits and protections of its laws; (ii) the claim must arise from or relate to the defendant's forum-related activities; and (iii) the exercise of jurisdiction must comport with fair play and substantial justice (*i.e.*, be reasonable). *Schwarzenegger*, 374 F.3d at 802. Once a

United States District Court
Northern District of California

plaintiff demonstrates the first two prongs of the test apply, the burden shifts to the defendant to show that exercising jurisdiction over it would not be reasonable. *Id.*

Hytto argues that its offering an interactive website that is accessible in the U.S., selling products to customers in the U.S., and using California-based companies for support serves are insufficient to give rise to specific personal jurisdiction. S.D. disagrees. S.D. also argues that the act of intercepting transmissions between app users, as alleged, constitutes the commission of an international tort within the U.S., which gives rise to specific personal jurisdiction.

### a. Purposeful Direction.

The first prong of this three-part test addresses the directionality and intent of a defendant's conduct by examining whether a defendant has "purposefully availed" itself *of* or "purposefully directed" its conduct *at or to* the forum. Though the terms "purposeful availment" and "purposeful direction" are sometimes used interchangeably, they represent two distinct concepts. *Id.* Courts typically apply "purposeful availment" analysis to suits sounding in contract, while courts apply "purposeful direction" analysis to suits, like this one, that sound in tort. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (citations omitted); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1215 (C.D. Cal. 2017) ("Plaintiffs' federal claims under the Wiretap Act bear a 'close relationship' to the tort of invasion of privacy.")

Courts determine whether a defendant has "purposefully directed" its conduct at the forum by applying, yes, another three-part test. For a defendant to have purposefully directed his conduct at or to a forum, he must (i) have committed an intentional act (ii) expressly aimed at the forum that (iii) causes harm the defendant knows is likely to be suffered in the forum. *Calder v. Jones*, 465 U.S. 783, 788 (1984); *Schwarzenegger*, 374 F.3d at 803. Courts sometimes refer to this test as the "effects" test. The "purposeful direction" test examines the defendant's conduct with respect to the forum, not with respect to a resident of the forum. *Axiom Foods, Inc. v. Acerchem Int'l Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Further, the relationship between the defendant's suit-related conduct and the forum state "must arise out of [a] contact[] that the *defendant himself creates* with the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added).

United States District Court
Northern District of California

5

1    The test also focuses upon where the consequences of a defendant's actions were felt,

2    rather than where the actions occurred. *Yahoo! Inc. v. La Ligue Contre Le Racisme et*

3    *L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006). In fact, "[t]here is no requirement that

4    the defendant have any physical contacts with the forum." *Brayton Purcell LLP v. Recordon &*

5    *Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (citations omitted). The Ninth Circuit has allowed

6    "the exercise of jurisdiction over a defendant whose only contact with the forum state is the

7    purposeful direction of a foreign act having effect in the forum state." *See College Source, Inc. v.*

8    *AcademyOne, Inc.*, 653 F.3d 1066, 1076-77 (9th Cir. 2011) (internal citation omitted).

9    Under the "purposeful direction" test, an intentional act refers to "an intent to perform an

10    actual, physical act in the real world, rather than an intent to accomplish a result or consequence of

11    that act." *Brayton Purcell*, 606 F.3d at 1128 (citations omitted). The "intentional act" standard is

12    easily satisfied here because S.D. alleges that Hytto purposefully intercepted electronic

13    transmissions from and/or to users in the U.S. *See Bancroft & Masters, Inc. v. Augusta Nat. Inc.*,

14    223 F.3d 1082, 1082 (9th Cir. 2000) (sending letter an intentional act); *Valentine v. Nebuad, Inc.*,

15    No. 08-cv-05113-TEH, 2009 WL 8186130, at *6 (N.D. Cal. Oct. 6, 2009) (placing hardware

16    interception devices on data hubs an intentional act); *Bergstein v. Parmar*, No. 13-cv-6167-DMG,

17    2014 WL 12586073, at *3–4 (C.D. Cal. June 23, 2014) (recording telephone conversations

18    intentional act).

19    The next prong of the test, "express aiming," occurs when a defendant is alleged to have

20    engaged in wrongful conduct targeted at a plaintiff the defendant knows is a resident of the forum

21    state. *Walden*, 134 S.Ct. at 1123. Here, the record indicates that Lovense.com, Hytto's website,

22    was at minimum tailored for ease-of-use by American users (*e.g.*, prices in dollars, preselected

23    shipping settings, English-language[1] defaults on the website and English-language promotional

24    materials, and testimonials from American customers). Further, Hytto had several partnerships

25    with American distributors for the within-U.S. shipping of products purchased from Lovense.com,

26    and Hytto also placed products in brick-and-mortar stores located in the U.S.

27    _____

28    [1] The U.S., of course, is not the only country where English speakers reside.

The record demonstrates, therefore, that Hytto was aware of its significant American customer base.[2]  By intercepting the transmissions of Body Chat app users, Hytto targeted its wrongful conduct at customers, some of whom Hytto knew, at least constructively, were residents of the U.S.  Thus, the "express aiming" requirement is satisfied.  *See Apollo Educ. Grp., Inc. v. Somani*, No. 15-cv-1056-EMC, 2015 WL 4880646, at *3 (N.D. Cal. Aug. 13, 2015) ("[S]pecific jurisdiction is appropriate where the alleged torts . . . occur in the forum state, even where the alleged tortfeasor [is] not physically present in that forum, but engages in the unlawful activity online."); *Bergstein*, 2014 WL 12586073, at *3–4 (evidence of knowledge of plaintiff's connection with forum and evidence of plaintiff's suffering harm in forum as a result of defendant's conduct sufficient to give rise to "express aiming").

The third element of the "purposeful direction" test, causing harm the defendant knows is likely to be suffered in the forum state, is also satisfied.  It was foreseeable that Hytto's alleged interceptions would harm S.D. and other similarly-situated individuals and that at least some of this harm would occur in the U.S.—where Hytto knew no small number of its customers resided. *See Bergstein*, 2014 WL 12586073, at *3-4 (citation omitted).  Accordingly, S.D. has satisfied all three prongs of the "purposeful direction" or "effects" test and, therefore, has satisfied the first prong of the Ninth Circuit's specific personal jurisdiction test.

### b.    Claim Arising From Defendant's Forum-Related Activities.

The second prong of the Ninth Circuit's specific personal jurisdiction test examines whether a defendant's activities in the forum are the "but for" cause of the claim.  *Bancroft*, 223 F.3d at 1088.  The parties have spilled no small amount of ink haggling over the characteristics of Lovense.com.  Yet, in the Court's view, the only reason Lovense.com's features are significant is

---

[2] The Court is unpersuaded by S.D.'s arguments that Hytto's contracts with California-based companies (Paypal, Facebook, Indiegogo, Twitter, Apple, and Google) give rise to specific personal jurisdiction.  The alleged tortious conduct (interception of data) has nothing to do with Hytto's contacts with these companies.  Moreover, businesses around the globe increasingly use these companies for business support services.  Using relationships with these companies to exercise specific personal jurisdiction over defendants (where the causes of action do not arise from those relationships) would expand the reach of many courts in a way surely unintended by the Ninth Circuit's careful system of pronged tests.

because they demonstrate Hytto's awareness of the location of a significant group of its customers. The suit-related conduct most pertinent for the analysis at hand is Hytto's alleged interception of communications to (or from) persons in the U.S., *not* the architecture or interactivity of Lovense.com.  Hytto's alleged interception of transmissions to and/or from U.S.-based users—its forum-related conduct—forms the basis for the claims in the FAC.  *See, e.g., Walden*, 134 S.Ct. at 1123-24 (defendant need not be present in forum to commit tortious act there); *Francis v. Api Tech. Services*, LLC, No. 13-cv-627, 2014 WL 1142447, at *6 (E.D. Tex. April 29, 2014) ("Although the activities occurred electronically or over the internet, accessing a person's home IP address is certainly directing an activity at [the forum state].")  Accordingly, S.D. has met her burden with respect to the second prong of the Ninth Circuit's specific personal jurisdiction test.

### c.    Reasonableness.

Because S.D. has met her burden with respect to the first two factors, the burden shifts to Hytto to satisfy the third factor.  *Schwarzenegger*, 374 F.3d at 802.  Hytto must show that it would be unreasonable for this Court to exercise personal jurisdiction over it.  This Hytto fails to do.

The third prong of the Ninth Circuit's test requires a court to consider (i) the extent of the defendant's purposeful injection in the forum state, (ii) the burden on the defendant of defending in the forum, (iii) the extent of the conflict with the sovereignty of the defendant's state, (iv) the forum state's interest in adjudicating the dispute, (v) the most efficient judicial resolution of the controversy, (vi) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (vii) the existence of an alternative forum.  *Id.* at 1088.  No factor is dispositive, but the moving party must address each.  *Ziegler v. Indian River Cty.*, 64 F.3d 470, 475 (9th Cir. 1995).  In its briefing, Hytto does not address any of these factors or explain why exercising specific personal jurisdiction would be unreasonable.  Therefore, Hytto has not met its burden.  The Court denies Hytto's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.

## C.    Wiretap Act Claim.

The Wiretap Act prohibits "intercept[ions]" of "electronic communications."  18 U.S.C. §§ 2510, 2511.  The Act defines "intercept" as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."

*Id.* § 2510(4).  To qualify as an "electronic communication," data must be transmitted "in whole or in part by a . . . system that affects interstate or foreign commerce."  *Id.* § 2510(12).  The "contents" of a communication are defined as "any information concerning the substance, purport, or meaning of that communication."  *Id.* § 2510(8).  The Act also provides that "[i]t shall not be unlawful . . . for a person . . . to intercept a wire, oral[,] or electronic communication where such person is a party to the communication."  *Id.* § 2511(2)(d).

Hytto argues that S.D.'s Wiretap Act claim is deficient for four reasons: (i) the information was not intercepted from a transmission over the internet but from a Bluetooth transmission (and which Hytto avers does not constitute an "electronic communication" under the Act); (ii) the information transmitted and intercepted did not constitute "communication" under the Act; (iii) Hytto is a party to the communication; and (iv) the interception alleged falls under a statutory "ordinary course of business" exception.

### 1.     Interceptions of Electronic Communications.

Hytto first argues that S.D. did not sufficiently allege "interception" of "electronic communications" because the FAC alleges interception occurs as a smartphone transmits the message to a paired device using Bluetooth technology.  Hytto explains that Bluetooth technology can only transmit data over very short distances and, therefore, is not a "system that affects interstate or foreign commerce."

The FAC undermines Hytto's premise.  In the FAC, S.D. alleges at least once that Hytto's interception occurs while the information travels along the internet, not while the information travels via Bluetooth from a smartphone to a paired device: ". . . by transmitting these communications to its servers *at the same time the communications were being transmitted over and received through the internet* via the Body Chat App, [Hytto] intentionally used, or endeavored to use, the contents of such electronic communications while knowing or having reason to know that the data was obtained through the interception of an electronic communication."  (FAC ¶ 59 (emphasis added).)  The internet is most certainly a "system that

affects interstate or foreign commerce."[3]  *See* § 2510(2); *see also United States v. Sutcliffe*, 505 F.3d 944, 952 (9th Cir. 2007) ("[U]se of the internet is intimately related to interstate commerce.").  Therefore, S.D. sufficiently alleges the "interception" of "electronic communications."

### 2.    Content.

Hytto next argues that the data transmitted does not constitute "content" of "electronic communication" under the Act.  Two types of information are at issue: (i) the date and time of usage of the app and device and (ii) the vibration intensity sent from app to app and then to a device.

As mentioned above, "contents" of a communication constitute "any information concerning the substance, purport, or meaning of that communication."  18 U.S.C. § 2510(8).[4]  Under the Act, "content" does not include so-called record information.  *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).  Record information is typically data generated automatically at the sending of the message and is incidental to the use of the communication device.  *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012).  Examples of record information include the origin of a phone call, a phone call's length, and geolocation data from an app.  *See, e.g.*, *Zynga*, 750 F. 3d at 1106-07; *United States v. Reed*, 575 F.3d 900, 914-17 (9th Cir. 2009) (calls' origination and length); *iPhone*, 844 F. Supp. 2d at 1061 (geolocation data).  In contrast, protected "content" under the Act is a person's "intended message to another" and the "essential part" of a communication.  *Zynga*, 750 F.3d at 1106.  Unlike record information, content is generated not automatically, but through the intent of the user.  *iPhone*, 844 F. Supp. 2d at 1061.

---

[3] Hytto has requested the Court take judicial notice of certain documents explaining the mechanics of Bluetooth technology.  The Court need not address this request or delve into Bluetooth functionality because, as explained herein, the FAC alleges the interception occurs as the data is transmitted across an internet connection.

[4] Using a dictionary in "wide circulation during the relevant time frame," the Ninth Circuit interpreted the term "substance" to mean "the characteristic and essential part," the term "purport" to mean the "meaning conveyed, professed or implied," and the term "meaning" to signify "the thing one intends to convey . . . by language."  *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (citations omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   The date and time information is identical in character to record information other courts

2   have deemed is not "content" under the Wiretap Act.  This data constitutes information *about* the

3   message or transmission rather than constituting a message or transmission unto itself.

4   Accordingly, to the extent S.D.'s Wiretap Act claim depends on the date and time of usage data

5   Hytto collected, the claim fails.

6   The Court next considers the nature of the vibration intensity data allegedly intercepted.  In

7   contesting whether the interception of a transmission containing vibration intensity instructions

8   constitutes "content" under the Wiretap Act, the parties ask the Court to evaluate whether touch

9   constitutes "content."  This appears to be an issue of first impression.

10   Individuals, of course, communicate by touch all the time.  A pet owner can communicate

11   to its dog, by tugging (gently) on the leash, the owner's desire that the dog stop walking or slow

12   down.  A person can communicate his happiness to see a friend by a hug or a handshake.  It is

13   only with the evolution of certain technologies that the conveyance of such unspoken

14   communications is now apparently not limited to situations where both the sender and recipient of

15   touch-based communication are in the same location.  The involvement of technology in the

16   transmission of data does not change the character of the data.  That the internet is used to effect a

17   touch-based communication does not change the essential character of that communication.

18   Here, the Body Chat app transmits a user's desired strength of touch.  This desired

19   strength, or vibration intensity, is not "incidental" to the communication occurring between the

20   apps and, by extension, between the humans operating each app; it is the very essence of this

21   particular type of touch-based communication.  (*See* FAC ¶¶ 30 (noting app's purpose is to

22   facilitate long-distance interaction), 31.)  Further, the vibration intensity is entered into an app

23   only at the user's instigation; unlike record information, vibration intensity is not automatically-

24   generated data.  (*See* FAC ¶ 36 (alleging that the vibration intensity communicated from app to

25   app and then to a paired Lovense device is "selected by users"); (Dkt. No. 36 (Motion to Dismiss)

26   at p. 11 (vibration intensity "entered into the app causing it to vary the speed of the sex toy").)

27   Accordingly, vibration intensity constitutes "content" under the Wiretap Act.

28   In sum, to the extent the allegations concern the interception of date and time information,

1  Hytto's motion to dismiss is granted; to the extent the allegations concern the interception of the

2  vibration intensity, Hytto's motion to dismiss is denied.

3         **3.**      **Parties to Communication.**

4        Hytto next argues that S.D. fails to state a Wiretap Act claim because Hytto is a party to

5  the communications described in the FAC.  Under the Wiretap Act, "It shall not be unlawful . . .

6  for a person not acting under color of law to intercept a wire, oral, or electronic communication

7  where such person is party to the communication or where one of the parties to the communication

8  has given prior consent to such interception . . . ."  18 U.S.C. § 2511(2)(d); *see Crowley v.*

9  *CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (no liability under Wiretap Act

10  where party "acted as no more than the second party to [that] communication").  In the context of

11  the Wiretap Act, "a party to the conversation is one who takes part in the conversation."  *In re*

12  *Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F. 3d 125, 140-41 (3d Cir. 2015); *cf.*

13  *In re Google Inc.*, No. 13-md-02430-LHK, 2013 WL 5423918, at \*14 (N.D. Cal. Sept. 26, 2013)

14  (as host of email service, Google not intended recipient of the email).

15        As alleged in the FAC, Hytto, its servers, and/or the Body Chat app were not participants

16  in user to user communications.  The FAC's allegations suggest only that the app was a conduit or

17  host for such communication.  For example, the FAC alleges that the Body Chap app "lets *users*

18  *and their partners* control *and communicate* through the paired devices over long distances" and

19  "uses the internet to *transmit the users' communications*."  (FAC ¶ 30 (emphasis added).)  At no

20  point does that FAC allege that users communicated with Hytto or with the Body Chat app itself.

21  *See Backhaut v. Apple. Inc.*, 74 F. Supp. 3d 1033, 1043 (N.D. Cal. 2014) (messages not addressed

22  to defendant considered intercepted).  For these reasons, the present case is distinguishable from

23  the facts in the cases Hytto cites.  *See In re Google Inc. Cookie Placement Consumer Privacy*

24  *Litig.*, 806 F. 3d 125, 140-41 (3d Cir. 2015) (cookies on users' computer a proxy for user and

25  therefore directly communicated with defendants about webpage user visiting); *Crowley*, 166 F.

26  Supp. 2d at 1269 (no Wiretap Act claim where plaintiff directed information to defendant

27

28

1   Amazon, which Amazon then sent along to another party).[5]

2        Hytto also argues, for the first time in its reply brief[6], that a user's sending a desired

3   vibration intensity to a device is not a two-party communication and therefore is not captured by

4   the Wiretap Act.  This characterization may be true when dissecting the nature of the transmission

5   between a single user deploying his or her own paired device, but this is not the alleged

6   intercepted communication at issue in this case.  Rather, S.D.'s Wiretap Act claim, as discussed

7   above, centers upon the interception of communication from user to user as that communication is

8   transmitted *over the internet*.  S.D.'s Wiretap Act claim does not depend upon intercepting a

9   vibration intensity instruction from a user to a paired device.  Hytto's argument is therefore

10  unpersuasive.  S.D. sufficiently alleges that Hytto is not a party to the communication at issue.

11       **4.    Ordinary Course of Business Exception.**

12       Hytto next argues that S.D.'s Wiretap Act claim fails because the alleged interception falls

13  within the "ordinary course of business" exception.  This exception comes from a section of the

14  Act that excludes from liability devices "being used by a provider of wire or electronic

15  communication service in the ordinary course of its business. . ."  18 U.S.C. § 2510(5)(a)(ii).

16  There are competing views within the Ninth Circuit as to whether this exception should be

17  interpreted broadly or narrowly.  District courts who have construed the exception narrowly have

18  held that the exception only applies where there is "some nexus between the need to engage in the

19  alleged interception and the [provider's] ultimate business, that is, the ability to provide the

20  underlying service or good."  *In re Google Inc.*, 13-md-02430-LHK, 2013 WL 5423918, at *8, 11

21  (N.D. Cal. Sept. 26, 2013) (holding no nexus between interception of emails by email host and

22  scanning email contents for targeted advertising purposes).  Looking to the plain language of the

23  statute, these courts have noted that both "its" and "ordinary" act as restraints to the potentially

24  broad scope of "business."  *See Matera v. Google, Inc.*, No. 15-cv-4062-LHK, 2016 WL

25

26  [5] If the Body Chat app were the originator of the communication, as Hytto argues, then no user
    input would be required to initiate the communication, and, as alleged in the complaint, user input
27  is the source of the vibration intensity instructions.

28  [6] The Court is not obligated to consider an argument newly raised in a reply brief.  *Zamani v.
    Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

United States District Court
Northern District of California

82006189, at *7 (N.D. Cal. Aug. 12, 2016) (the word "its" limits scope of exception to particular nature of communication service that business provides); *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 844 (N.D. Cal. 2014) (the word "ordinary" "implies some limits" on company's ability to self-define the scope of the exception). Absent these modifiers, these courts have observed, a service provider could claim any activity fits the exception, no matter how attenuated that activity is from the communication service at issue. *See Matera*, 2016 WL 82006189, at *7. District courts who have applied a broad construction, on the other hand, have held that the exception is not limited to actions necessary to providing the electronic communication service and that the exception encompasses all activities taken by a provider to further the entity's legitimate business purposes. *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *10-11 (N.D. Cal. Dec. 3, 2013).

This Court agrees with the reasoning of the opinions that construe the "ordinary course of business" exception narrowly. The broad construction of the exception, in the Court's view, does not give effect to all components in the pertinent statutory section. The plain language of the statute supports the narrow construction of the exception.

Applying the narrow construction raises two crucial questions: first, what is Hytto's underlying service or good, and, second, does the transmission of user-to-user communications to Hytto's servers, as alleged, facilitate that service or good? *See id.*, at *8 (noting that scope and nature of alleged interceptor's business circumscribes applicability of ordinary course of business exception). Answering these questions meaningfully, as many courts have noted, is difficult at the motion to dismiss stage. *See, e.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1086-87 (N.D. Cal. 2015).

Hytto argues that, as alleged in the FAC, the service the app provides is to control the volume or intensity of a paired sex toy. Hytto then avers that it is only "common sense" that "collecting" these communications is connected to that service. This explanation is insufficient. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (party seeking benefit of exception has burden to show exception applies). Hytto does not explain how the collection of the communication is necessary to enabling users to use an app to control the vibration intensity of a

1   paired sex toy.  Put another way, Hytto has failed to explain why it would be difficult or

2   impossible to provide its service without the objected-to interception, particularly where the FAC

3   alleges that Hytto markets the app as functioning peer-to-peer.  (FAC ¶ 33.)  Hytto's argument,

4   therefore, is not persuasive.  *See Campbell*, 77 F. Supp. 3d at 844 ("However, [defendant] has not

5   offered a sufficient explanation of how the challenged practice falls within the ordinary course of

6   its business, which prevents the court from determining whether the exception applies.").

7        It is entirely possible, of course, that evidence will emerge during discovery that

8   demonstrates *the nexus between* the app's services and Hytto's collection of user-to-user

9   communications.  At this stage of the case, however, determining that the exception applies is

10  premature.  Hytto is free to raise its "ordinary course of business" argument again at summary

11  judgment.  *See Campbell*, 77 F. Supp. 3d at 845; *see also In re Google Gmail Litig.,* No. 5:13–

12  MD–2430–LHK, 2014 WL 294441, at *3 n.2 (N.D. Cal. Jan. 27, 2014) (noting that "factual

13  development would be necessary" to determine whether the challenged interceptions fit within the

14  exception because the court "cannot determine based on the pleadings alone what is 'necessary,'

15  'customary or routine,' or 'instrumental' to [defendant's] business").

16  **D.     State Common Law Claims.**

17       Hytto next argues that S.D. has failed to state a claim for intrusion upon seclusion and

18  unjust enrichment under state law.

19       To state a claim for intrusion upon seclusion, S.D. must allege (i) an intrusion into a

20  private place, conversation, or matter (ii) in a matter highly offensive to a reasonable person.  *Taus*

21  *v. Loftus*, 40 Cal. 4th 683, 725 (Cal. 2007).  Hytto first argues that no intrusion took place because

22  it was party to the communications.  The Court has already held that the FAC's allegations do not

23  support this contention.  Any arguments depending from this premise are therefore not persuasive,

24  even in this new context.

25       Hytto next argues that "it is commonly understood" that apps collect information from

26  users about usage and, therefore, its data gathering is not "highly offensive."  The Court disagrees.

27  The FAC alleges that Hytto promises users that it will not store sensitive data.  The FAC includes

28  a snapshot from Lovense.com that reads: "We take your privacy very seriously.  We have

United States District Court
Northern District of California

United States District Court
Northern District of California

1    designed our system to record as little information about our users as possible.  *Absolutely no*

2    *sensitive data* (pictures, video, chat logs) pass through (or are held) *on our servers*.  *All data*

3    *transfers are peer-to-peer*.  Furthermore, we encrypt the data before passing it along to your

4    partner."  (FAC ¶ 33, Fig. 2.)  After reviewing this policy, a reasonable person could conclude that

5    Hytto would not harvest data about how its Body Chat app or paired devices were used.  Making

6    all reasonable inferences in the non-moving party's favor, as the Court must, these statements

7    created an expectation of privacy that was undermined by Hytto's alleged behavior.  *See In re*

8    *Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 295 (3d Cir. 2016) (company may commit

9    intrusion upon seclusion by collecting information using duplicitous tactics).

10          Further, the language of the Lovense.com disclaimer highlights the particularly sensitive

11    character of the communications and data generated by the use of the app and the use of a paired

12    device.  Communications concerning one's sexual behavior is of an entirely different character

13    than, as Hytto argues, one's gaming or web browsing history.  Accordingly, the Court holds that

14    the collection of user data, as alleged, was "highly offensive" to a reasonable person and denies

15    Hytto's motion to dismiss the intrusion upon seclusion claim.

16          Finally, S.D. acknowledges that its unjust enrichment allegations are deficient because

17    they do not identify the law of a particular state.  Hytto also argues that S.D.'s unjust enrichment

18    claim fails to present non-conclusory allegations that Hytto unjustly retained benefits at S.D.'s

19    expense or that, by downloading the Body Chat app, she conveyed a benefit to Hytto that can and

20    should be returned.  S.D. does not address these arguments and therefore concedes them.  Hytto's

21    motion to dismiss this claim is therefore granted.

22    //

23    //

24    //

25    //

26    //

27    //

28    //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**CONCLUSION**

For all the foregoing reasons, the Court GRANTS in part and DENIES in part Hytto's motion to dismiss.  The Court will allow S.D. leave to file an amended complaint in order to address the deficiencies identified above.  *See* Fed. R. Civ. P. 15(a).  S.D.'s amended complaint shall be filed no later than June 14, 2019.

**IT IS SO ORDERED.**

Dated: May 14, 2019

JEFFREY S. WHITE
United States District Judge